673 P.2d 979

**STATE of Arizona, Appellee,**

v.

**Les KEREKES, Appellant.**

**No. 1 CA–CR 6439.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 10, 1983.

**236**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

A jury found appellant guilty of one count of child molestation in violation of A.R.S. § 13–1410 and one count of committing the infamous crime against nature, A.R.S. § 13–1411. Appellant was sentenced to concurrent presumptive terms of seven years on each count. The court gave appellant credit for presentence incarceration on only one of the counts on which he was convicted.

Three issues are raised in this appeal:

1. Whether the judge's consideration of appellant's refusal to cooperate with the presentence investigator was improper.

2. Whether the trial court was required to give the appellant credit for presentence incarceration on both concurrent sentences.

3. Whether the prosecutor's closing argument was improper.

## THE COURT'S CONSIDERATION OF APPELLANT'S REFUSAL TO COOPERATE WITH THE PROBATION OFFICE

■ Following the convictions the court directed the probation office to prepare a presentence report. When a probation officer attempted to interview the appellant he refused to make any statements, commenting that it was the court's job to determine the facts of the case and that he did not want to say anything regarding the crimes for which he had been convicted. This fact was duly reported to the court. The presentence report contains the following comment:

> Based upon the defendant's unwillingness to provide the probation department with any information and his attitude towards the probation department, the defendant is obviously not an appropriate candidate for probation.

The report went on to recommend commitment to the department of corrections and as one of the factors justifying the recommendation cited appellant's lack of cooperation. At the sentencing the judge said:

> Mr. Kerekes, I have reviewed the presentence report in this matter. I noted the time you have spent in custody. I noted your prior felony conviction for sexual perversion; *your lack of cooperation with the Adult Probation Department;* the nature of the offenses; the recommendation of the attorneys and interested parties in this matter.
>
> Based upon all the factors the Court has determined that the presumptive term seems to be appropriate in this particular case. (emphasis added).

The appellant argues that he has a constitutional right not to provide information to be used in connection with his sentencing and that to penalize him for invoking his Fifth Amendment privilege is unconstitutional. We agree because we believe that the Supreme Court of the United States, in an opinion written by Chief Justice Burger, has settled the matter. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359

(1981), the defendant was charged with first degree murder. The trial judge, *sua sponte* and without notice to defense counsel, directed a psychiatrist to examine the defendant to determine if he was competent to stand trial. The psychiatrist interviewed the defendant at some length and found him competent. Following the defendant's conviction the court, as required by Texas law, submitted questions bearing on the sentence to be imposed to the jury. One of the factors which the jury was required to consider was whether the defendant would be a danger to the community in the future. The state called the psychiatrist who had conducted the competency examination and he was permitted to testify that the defendant would be a danger in the future. The jury answered the question of future dangerousness affirmatively so that under Texas law the death penalty was mandatory. The defendant appealed on the grounds that the use of the psychiatrist's testimony against him at the penalty phase of the proceedings, when he had not been advised of his right to remain silent, was a violation of his Fifth Amendment privilege against self-incrimination. The Supreme Court agreed and vacated the death sentence.

The Supreme Court first considered whether the Fifth Amendment applied at all under the circumstances. The state argued that the defendant was not entitled to the protection of the Fifth Amendment because the doctor's testimony was used only to determine punishment after conviction and not to establish guilt. The court rejected that argument. Quoting from *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, (1961), it said:

> The essence of this basic constitutional principle [the Fifth Amendment privilege] is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers ....' (emphasis added).

451 U.S. at 462, 101 S.Ct. at 1872, 68 L.Ed.2d at 368.

The Supreme Court went on to say that the privilege does not turn upon the type of proceeding in which its protection is invoked but instead upon the nature of the statement invited. It concluded:

> We can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned.

451 U.S. at 462–63, 101 S.Ct. at 1873, 68 L.Ed.2d at 369.

We can discern no difference between a presentence investigation and the Texas sentencing hearing so far as the protection of the Fifth Amendment is concerned. An even more recent case supports our conclusion. In *Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982), the defendant, who had been convicted and was in jail awaiting sentencing, was told by a probation officer that he had no choice but to answer questions put to him during the course of preparation of the presentence report. The defendant acquiesced and confessed to numerous other crimes, all of which was made known to the sentencing judge who relied on the information in sentencing. The federal district court granted a petition for a writ of habeas corpus because appellant's privilege against self-incrimination had been violated and the circuit court of appeals affirmed, observing:

> This case, like *Estelle,* involves statements and admissions by an incarcerated defendant to an individual acting on behalf of the state that exposed the defendant to serious consequences. Accordingly we find the Fifth Amendment privilege against self-incrimination applicable to the state's use of appellee's probation interview.

*Id.* at 756 (footnotes omitted). Having concluded that the appellant had a right not to answer questions put to him by the probation officer, it follows, of course, that he could not be penalized for invoking that right. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

The state argues that any error in the trial court's refusal to make a statement is

harmless because appellant provided no mitigating factors for the sentencing judge's consideration, probation was not available, and presumptive concurrent sentences were imposed as to both counts. We do not agree. The minute entry relating to the sentence reads:

The Court further finds that there are no aggravating or mitigating circumstances sufficiently substantial to call for a greater or lesser term than the presumptive term.

This, as well as the trial judge's earlier quoted comments, show that the judge applied a balancing test between mitigating and aggravating circumstances. We cannot say with certainty that nothing can be found in the record which the judge could consider in mitigation. It may well be that the appellant's failure to cooperate was given sufficient weight to preclude mitigated sentences. The error is fundamental and we cannot find it harmless beyond a reasonable doubt. Our conclusion does not preclude the reimposition of presumptive sentences if the trial judge, in conscientiously balancing the factors he may properly consider, concludes that such sentences are indicated.

We realize that questions remain as to the scope and application of the rule we adopt. We think it is undesirable to try to raise and resolve hypothetical questions without the benefit of briefing on concrete issues.

■ Appellant argues that he is entitled to credit for presentence incarceration on both concurrent sentences. We believe appellant is correct but we are required to follow the contrary rule laid down by our supreme court in *State v. Wallis,* 132 Ariz. 445, 646 P.2d 876 (1982).

## PROSECUTOR'S ARGUMENT

■ Appellant's first contention in regard to the closing argument is that the state prejudicially mis-defined reasonable doubt. The prosecutor said:

In a civil case—civil case, being a contract dispute between two business part-ners, or an auto accident case—in a civil case, the Plaintiff, in order to win, must prove his case by just a little bit past half way.

If the scale is tipped 51%, one percent past half way—past the 50% mark—the Plaintiff wins. That is a civil case.

We, however, in a criminal case, the State is the Plaintiff in a criminal case—the State must prove its case beyond a reasonable doubt.

Clearly, that's more than 51%. How much more, nobody knows.

The Judge will not give you a number figure. Nobody can give you a number figure.

It might be 70%; it might be 80%. It even could be like a bar of Ivory Soap, 99%.

You are the ones that will have to figure out what a reasonable doubt is, when the State has proved its case beyond a reasonable doubt.

The state responds that the argument is taken somewhat out of context. The prosecutor actually continued his argument as follows:

Reasonable doubt is not beyond any shadow of a doubt.

It does not mean beyond any doubt whatsoever. Because, ladies and gentlemen, in every criminal case, some doubt exists. There's always doubt.

Counsel for appellant did not object to the prosecution's closing argument. Neither did appellant's counsel request that the trial court give the jury a specific instruction with guidelines for determining reasonable doubt. Rather, counsel's trial strategy was to argue to the jury, in his own closing argument, his view of reasonable doubt. The argument was extensive and among other things he discussed the concept of the presumption of innocence, contrasted the burdens of proof which prevail in civil and criminal cases and the reasons for the differences and said that the state must tilt the scales substantially in its favor before a conviction is justified. The absence of any objection to the prosecutor's closing arguments waives the issue on appeal unless the

circumstances have created fundamental error. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981). Viewing all of the comments together we find no fundamental error arising out of the closing arguments in regard to the correct standard for reasonable doubt. Although percentage figures of 70% and 80% were mentioned, the prosecutor also said that reasonable doubt could mean that he had to prove his case by as much as 99%. When the rest of his argument is read, it is clear that the prosecutor did not postulate his argument so as to instruct the jury that if they were convinced by 70% or 80%, they could convict the appellant. Rather, the prosecutor merely indicated to the jury that reasonable doubt is a concept which is hard to define and must be determined by the jury in each case.

■ Appellant next contends that the prosecutor improperly focused the jury's attention on the fact that appellant had failed to testify. The prosecutor said:

Ladies and gentlemen, the evidence that has been presented on this witness stand has been uncontroverted, except for what the Defense lawyer has speculated about in front of you, what he's speculated, like lawyers' arguments is not evidence.

■ The tests to be applied in determining whether remarks made by the prosecutor should require reversal have recently been reiterated in *State v. Hallman,* 137 Ariz. 31, 668 P.2d 874 (1983). There, the court stated that the considerations include "(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." While we realize that *Hallman* did not deal with purported comments on a defendant's silence it is nonetheless instructive. While we do not find the prosecutor's remarks to have been a comment on the appellant's silence, to whatever extent they could be considered

such, in light of the *Hallman* criteria they were harmless beyond a reasonable doubt.

The statement complained of occurred in the state's rebuttal argument. The appellant's closing argument had relied strongly on discrediting the state's witnesses. Counsel for the appellant pointed out to the jury various inconsistencies in the testimony and even flatly stated that the witnesses lied. Viewed in this context, the most reasonable interpretation of the prosecutor's statement was that the appellant's counsel had failed to discredit the credibility of the state's witnesses.

■ The prosecutor's argument must be viewed in the context of the arguments of the defense. *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580, (1981). Not every reference to the fact that testimony has been uncontroverted necessarily focuses on the appellant's exercise of his right not to testify. *See State v. Mata,* 125 Ariz. 233, 609 P.2d 48, (1980). The statement set out above, when viewed in the context of the case, does not focus on the appellant's decision not to testify. *Compare State v. Decello,* 113 Ariz. 255, 550 P.2d 633 (1976).

Our conclusion is strengthened by the fact that the trial court instructed the jury, both prior to trial and following the completion of all the testimony, that the defendant had the right to require the state to prove its case beyond a reasonable doubt and that the defendant was not required to testify.

This matter is remanded for resentencing in accordance with the rule of this decision.

GREER and JACOBSON, JJ., concur.