139 Ariz. 446 (1984)
679 P.2d 92
In the Matter of the APPEAL IN PIMA COUNTY, JUVENILE ACTION NO. J-77027-1.
No. 2 CA-CIV 4864.
Court of Appeals of Arizona, Division 2.
January 5, 1984.
Review Denied April 3, 1984.
*447 D. Jesse Smith, Tucson, for appellant.
Stephen D. Neely, Pima County Atty. by Clint Stinson, Deputy County Atty., Tucson, for appellee.
OPINION
HATHAWAY, Judge.
A delinquency petition charging appellant with the first-degree murder of his father's girlfriend was filed on March 31, 1983. The following day, the state petitioned the juvenile court to transfer the minor to the superior court for criminal prosecution as an adult. The appellant waived a hearing on probable cause and after the transfer hearing, the juvenile court granted the petition to transfer. This appeal was taken from the court's transfer order.
The appellant raises the following arguments on appeal:
1. The "reasonable grounds" standard of proof set forth in Rule 14(b) of the Rules of Procedure for the Juvenile Court violates the due process clause of the Fourteenth Amendment;
2. The provision of Rule 14(a) which permits the juvenile court to order a mental examination of the appellant violated his privilege against self-incrimination;
3. The juvenile court utilized improper criteria as the basis for its determination to order appellant's transfer;
4. The juvenile court abused its discretion in ordering the transfer in light of the appellant's lack of a prior record and the court's failure to consider treatment facilities outside the state;
5. The appellant was denied effective assistance of counsel;
6. The appellant's waiver of the probable cause hearing was invalid due to the failure of the juvenile court to apprise him of his "Boykin" rights.
The first and last issues have been clearly decided adversely to appellant's position by the Arizona Supreme Court. In the Matter of the Appeal in Maricopa County Juvenile Action No. J-84984, 138 Ariz. 282, 674 P.2d 836 (1983); In re Maricopa County, Juvenile Action No. J-73355, 111 Ariz. 37, 523 P.2d 65 (1974).
The remaining issues principally concern the effect of appellant's refusal, upon advice of counsel, to cooperate in the mental examination ordered by the juvenile court pursuant to Rule 14(a). Following appellant's waiver of a probable cause hearing, the state requested the court to order a mental examination prior to the transfer hearing. At a hearing on the state's motion, appellant opposed the motion on the ground that the statements made by the appellant during such an examination could be used against him not only for purposes of the transfer hearing but also in any subsequent proceedings on the underlying *448 criminal charges. Appellant argued that such an order would compel him to assist the state in meeting its burden of proof both as to non-amenability to treatment as a juvenile and as to the commission of the criminal offense, both in violation of appellant's privilege against self-incrimination. Counsel for appellant informed the court that if the examination were ordered, she would advise appellant not to cooperate. The court nevertheless ordered the examination, but stated that the decision whether to submit to it was up to the appellant. No limitation was ordered on the use of the results of the examination. Further, it is apparent that the appellant's decision whether or not to submit to the examination would be a significant factor in the court's determination with respect to appellant's amenability to treatment:
"THE COURT: What if the minor  let's take it a step further  what if the minor says, `I'm not talking to my probation officer about this, not giving her any information either?' Then it's the same kind of situation. The probation officer comes into court, says, `Haven't been able to get any cooperation from the minor, therefore I'm not able to make an evaluation, and it's my opinion that he's not amenable to treatment.'
MS. PARROTT: If the child is refusing to give evidence on advice of his attorney, he is exercising his right to remain silent. You cannot presume that he is, therefore, not amenable to treatment because he is not being cooperative.
THE COURT: But if you have nothing upon which to base a finding of amenability 
MS. PARROTT: If you have nothing upon which to base a finding of amenability, the State has failed to sustain its burden, and you cannot transfer.
THE COURT: No, no. Then you would make a finding based upon  in other words, the probation officer is not going to be able to come into court on that likelihood and say he is amenable.
All they are going to be able to do is give me an opinion. Based upon that, the Court is going to have to make a decision."
At the transfer hearing, the probation officer who prepared the transfer investigation report testified that, pursuant to the court's order, a psychologist attempted to conduct a psychological evaluation of the appellant but was unable to do so because of appellant's refusal, upon advice of counsel, to participate. The report concluded that the criteria for transfer set forth in Rule 14(b) had not been met and therefore recommended against transfer. The basis for that conclusion was that, although appellant had "indicated his willingness to cooperate with any therapy provided for him ...," he had never received any treatment and "[i]n this respect it is not possible to say the minor is not amenable to treatment when he has never participated or been involved in any treatment." The report recommended treatment for a 30-month period pursuant to program guidelines established by the Department of Corrections, but stated that the department had insufficient information about the appellant to say specifically what treatment would be offered. In response to the court's expressed concern that she had not fully investigated the possibilities for treatment through available facilities and had no basis for concluding that the appellant was amenable to treatment as a juvenile, the probation officer testified that she was unable to obtain specific recommendations from the Department of Corrections because of their lack of a psychological evaluation.
The court also heard testimony from Tom Turos, the program supervisor of the Department of Corrections' Catalina Mountain School, who described the various programs available for different types of juvenile offenders. This witness had reviewed the transfer investigation report, but had never met the appellant. Over appellant's objections, this witness testified that in his opinion it would be a "difficult task" to rehabilitate the appellant within the appropriate juvenile program available at the Catalina Mountain School.
*449 Testimony was also presented to the court from the appellant's parents, several school officials and a child care worker at the juvenile detention facility. Although this testimony was extensive, we feel it necessary to address only one matter which was of significance to the court in reaching its decision, that is, the appellant's pattern of expressing a desire to obtain revenge against persons who had slighted him, or even to kill them.
The court's order granting the transfer was preceded by a lengthy statement in which he listed the factors he considered in reaching his decision. In addition to the testimony discussed above concerning what the court characterized as the appellant's "seeming preoccupation with revenge or getting even," the court considered the fact that "there has been no justification or explanation of any kind presented to the Court to account for the conduct charged" and the appellant's "emotional attitude" and lack of "any remorse for what has occurred." The court also expressed concern that "no evaluation was performed on this mannor [sic] to afford the Court the opportunity to adequately assess this minor's response to treatment and need for treatment," and that no program for rehabilitation was available. The court further relied on Turos' opinion as to appellant's amenability to rehabilitation.
From the foregoing and a review of the transfer hearing transcripts, it is apparent that the juvenile court based its determination of non-amenability to treatment in large part on the appellant's refusal to cooperate with the court-appointed psychologist and his failure to exhibit remorse for the alleged murder. The record also establishes that appellant's silence on both counts was upon advice of counsel, in light of the court's refusal to limit the use which could be made of appellant's statements during the psychological evaluation. Similarly, the court's conclusion as to lack of rehabilitation programs was based on the probation officer's inability to obtain specific recommendations for treatment, which in turn stemmed from the lack of a psychological evaluation.
It is well settled that the privilege against self-incrimination is applicable in the case of juveniles in delinquency proceedings. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The instant case is procedurally similar to Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), where the supreme court held that the privilege against self-incrimination applied to a court-ordered psychiatric examination conducted for purposes of a subsequent sentencing hearing. The state seeks to distinguish Estelle on the basis that, in the instant case, appellant was fully apprised of his right to remain silent and in fact did so. What the state ignores is that the court's decision was strongly influenced by appellant's refusal to cooperate in the examination. The effect of the juvenile court's decision was thus to impermissibly penalize appellant for exercising his right to remain silent. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); see also State v. Kerekes, 138 Ariz. 235, 673 P.2d 979 (App. 1983).
As the supreme court noted in Estelle, the problem in this situation could have been remedied by placing appropriate limitations upon the use of appellant's statements in the court's order granting the request for a mental examination. 451 U.S. at 468, 101 S.Ct. at 1876, 68 L.Ed.2d at 373. Although the Rules of Procedure for the Juvenile Court do not address this matter, the Arizona Supreme Court has recognized the need to apply corresponding provisions of the Rules of Criminal Procedure to proceedings involving mental examinations of juveniles to determine competency to stand trial. State ex rel. Dandoy v. Superior Court, 127 Ariz. 184, 619 P.2d 12 (1980). Protection of a juvenile's privilege against self-incrimination similarly mandates the use of Rule 11.7 of the Rules of Criminal Procedure where a mental examination is ordered pursuant to Rule 14(b) of the Rules of Procedure of the Juvenile Court. We hold that by failing to order limits upon the use which could be made of *450 appellant's statements pursuant to the court-ordered evaluation and then penalizing the appellant for refusing to cooperate, the juvenile court violated the appellant's privilege against self-incrimination. In so holding, we emphasize that once appropriate limitations have been ordered, a juvenile's refusal to cooperate with an examination under Rule 14(b) may constitute evidence of non-amenability to treatment in available juvenile facilities.
Appellant's final argument is that he was denied effective assistance of counsel by virtue of counsel's waiver of the probable cause hearing. Appellant argues that there was no physical evidence linking him with the crime, and that the evidence would have shown that the sole witness, appellant's sister, could have committed the crime as easily as appellant and with equal probability. Appellant concedes that if a probable cause hearing had been held, the state could have presented evidence substantiating the charge of premeditated murder against appellant. The decision to advise appellant to waive the probable cause hearing was thus based on counsel's judgment as to the likelihood that the court would find probable cause as weighed against the impact the evidence of the crime would have upon the court's determination with respect to the transfer. In adopting the "minimal competence" standard to determine whether an accused has received effective assistance of counsel, the Arizona Supreme Court emphasized that the inquiry should focus on "the quality of counsel's performance, rather than on the effect of that performance on the outcome of the proceeding." State v. Watson, 134 Ariz. 1, 4, 653 P.2d 351, 355 (1982). (Emphasis in original) Our review of the record compels us to conclude that counsel's decision had a reasoned basis and that her performance overall more than exceeded the minimal competence standard of Watson.
The order of the juvenile court transferring the appellant to the adult division of the superior court is vacated, and the cause remanded for further proceedings consistent with this opinion.
BIRDSALL, C.J., and HOWARD, J., concur.