NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JIMMY WAYNE GUINARD, Appellant.

No. 1 CA-CR 13-0490
FILED 06-03-2014

Appeal from the Superior Court in Yavapai County
No.  P1300CR201101146
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

White Law Offices, PLLC, Flagstaff
By Wendy F. white
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

**P O R T L E Y,** Judge:

¶1        Jimmy Wayne Guinard appeals his convictions and sentences for two counts of transportation of dangerous drugs for sale and two counts of possession of drug paraphernalia. Guinard contends that the State vouched for one of its witnesses; that the trial court erred by denying his motion for mistrial; and that the court erred by imposing consecutive sentences because it allegedly believed the law required consecutive sentences. For the reasons that follow, we affirm Guinard's convictions and sentences.

## BACKGROUND

¶2        An informant working with sheriff's deputies purchased methamphetamine from Guinard on two separate dates. A jury convicted Guinard as charged, finding he committed one count of transportation for sale and one count of possession of paraphernalia on each of those dates. The trial court sentenced Guinard to an aggregate term of twenty years' imprisonment and Guinard now appeals. We have jurisdiction pursuant to Article 6, section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), 13-4031 and -4033.[1]

## ANALYSIS

I.        Did the State Vouch for the Informant?

¶3        The informant who purchased the methamphetamine from Guinard testified at trial. Guinard argues the State vouched for the informant when a deputy testified the informant was reliable and when the prosecutor addressed the informant's reliability and credibility in closing argument. Because Guinard did not object to any of the alleged vouching, we review for fundamental error. *See State v. Gendron*, 168 Ariz.

---

[1] We cite the current version of all applicable statutes unless revisions material to this decision have since occurred.

153, 154, 812 P.2d 626, 627 (1991) (finding that the failure to raise an issue at trial waives all but fundamental error). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005). Even if a defendant establishes fundamental error, the defendant must still demonstrate the error was prejudicial. *Id*. at ¶ 26.

### A. The Deputy's Testimony

**¶4**        Guinard attacked the reliability and credibility of the informant during cross examination of a deputy who worked with the informant. The informant's credibility was affected by several factors, including that he had used methamphetamine for years, and faced imprisonment if he did not cooperate with law enforcement. On redirect examination, the prosecutor asked the deputy, "Okay. Is there any indication that [the informant] wasn't reliable?" The deputy responded, "No, none. He was completely honest from the day of the arrest about his involvement with drugs, including the selling of the meth to the informant that he sold the drugs to, and not ever did he give us a reason to think he was lying about anything." Guinard argues the State vouched for the credibility of the informant through this testimony.

**¶5**        In discussing impermissible vouching, our supreme court has stated that:

> Two forms of impermissible prosecutorial vouching exist: (1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony. In addition, a lawyer is prohibited from asserting personal knowledge of facts in issue before the tribunal unless he testifies as a witness.

*State v. Bible*, 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993) (citation omitted). This was not prosecutorial vouching. A law enforcement officer's testimony regarding the credibility of another witness is not the same as prosecutorial vouching. *See State v. Martinez*, 230 Ariz. 382, 385 n.4, ¶ 10, 284 P.3d 893, 896 n.4 (App. 2012). We address, however,

whether the deputy's statement was an impermissible comment on the informant's credibility.

¶6          Generally, a witness may not comment about the truthfulness of statements by another witness. *Id.* at 385, ¶ 11, 284 P.3d at 896 (citing *State v. Reimer*, 189 Ariz. 239, 241, 941 P.2d 912, 914 (App. 1997)).    A trial court may, however, admit evidence of a witness's character for truthfulness once a party has attacked the witness's character for truthfulness. Ariz. R. Evid. 608(a).  Permissible evidence of a witness's character for truthfulness includes opinions regarding the truthfulness of the witness in general.  *Id.; see State v. Fulminante*, 161 Ariz. 237, 252-53, 778 P.2d 602, 617-18 (1988).  Guinard attacked the credibility of the informant during his cross examination of the deputy.  The State could in turn admit evidence of the informant's character for truthfulness.  We find no error, fundamental or otherwise.

¶7          Guinard's reliance on *State v. Schroeder*, 167 Ariz. 47, 804 P.2d 776 (App. 1990) is unavailing.   In *Schroeder*, an investigating officer testified she believed the victim was telling the truth when she interviewed the victim and, although we found the question and answer improper, we ultimately found no error.  167 Ariz. at 50-51, 804 P.2d at 779-80.  Here, we find no error because the deputy did not comment on the truthfulness of specific statements of another witness but that the informant had been honest about his involvement in the methamphetamine drug trade.  *See Reimer*, 189 Ariz. at 241, 941 P.2d at 914 (noting that opinion evidence of a witness's character for truthfulness in general was permitted by Arizona Rule of Evidence 608(a), but an opinion regarding the truthfulness of specific statements by another witness was not permitted).

      B.      The Prosecutor's Closing Argument

¶8          Guinard also argues the prosecutor vouched for the informant during the rebuttal portion of his closing argument when he placed the prestige of the government behind the informant's testimony.  As noted above, this type of conduct is prototypical prosecutorial vouching and is, in fact, prosecutorial misconduct.  *See Bible*, 175 Ariz. at 601, 858 P.2d at 1204 ("[I]mpermissible prosecutorial vouching exist[s] [] when the prosecutor places the prestige of the government behind its witness.").  Because Guinard did not object, we review for fundamental error.  *Henderson*, 210 Ariz. at 567, ¶ 19, 456 P.3d at 607.   In our determination of whether a prosecutor's conduct amounts to fundamental error, we focus our inquiry on the probability the conduct influenced the

jury and whether the conduct denied Guinard a fair trial. *State v. Wood*, 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994). "The focus is on the fairness of the trial, not the culpability of the prosecutor." *Bible*, 175 Ariz. at 601, 858 P.2d at 1204.

¶9        Because the alleged misconduct occurred during rebuttal, we view the prosecutor's argument in the context of Guinard's closing argument. *See State v. Kerekes*, 138 Ariz. 235, 239, 673 P.2d 979, 983 (App. 1983). In his closing argument, Guinard argued the informant was a thirty-year user of methamphetamine who was on disability because of mental problems, who not only bought and sold methamphetamine and marijuana but used his Social Security benefits to buy drugs. He argued the informant was a liar who had no credibility, who was not believable and who the jury could not trust. Guinard argued the informant had an incentive to lie because he hoped to obtain a reduction of his own pending charges and avoid prison. He further argued drug users like the informant steal from and lie to their own family and friends, and that all of the suspects the informant had "set up and busted" were former friends to whom he had lied. Guinard also argued the deputies who worked with the informant knew about his "credibility issues" yet continued to work with him. Finally, Guinard argued the informant shook so badly when he testified he looked like someone who was on drugs.[2]

¶10       The prosecutor addressed these arguments in rebuttal. Guinard identifies three portions of the prosecutor's rebuttal argument that allegedly vouched for the informant. In the first instance, the prosecutor argued:

> [The deputy] decided to use [the informant] because he believed that he was a good guy who was credible. He made the decision based upon his training, his experience, and in dealing with people of this nature for several years. He made the analysis that, no, this is somebody who's trustworthy; this is somebody I can work [with] who will be honest, who will follow up. And he testified that he was, he was reliable. [The informant]

---

[2] The informant shook so severely the jury submitted a question to him inquiring why he could be so calm on the audio recordings of the drug buys yet be "shaking and visibly affected" during his trial testimony.

called in regularly, did what was asked of him; he did everything that was asked of him. Nothing to indicate that he lied to [the deputy] at any time. [The deputy] testified that he was aware of that, never lied to him at all. He was a good informant.

¶11      We find no error. "[P]rosecutorial comments which are fair rebuttal to comments made initially by the defense are acceptable." *State v. Duzan*, 176 Ariz. 463, 468, 862 P.2d 223, 228 (App. 1993). Further, "during closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *Bible*, 175 Ariz. at 602, 858 P.2d at 1205. Guinard attacked the informant's credibility and the deputy's use of the informant. The prosecutor's argument was a fair rebuttal to those arguments and was based on the evidence admitted at trial and the reasonable inferences one could draw from that evidence. To the extent, if any, the argument commented on the informant's truthfulness, a prosecutor may characterize a witness as truthful when the argument is sufficiently linked to the evidence. *See State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997). The only limitations are that the prosecutor may not place the prestige of the government behind the witness or suggest that information not before the jury supports the testimony. *Id.* This portion of the prosecutor's argument did not improperly vouch for the informant.

¶12      The second instance of alleged vouching occurred when the prosecutor addressed how the informant shook during his testimony:

State's belief is that the reason he's shaking like a leaf yesterday is he's outed. He wasn't outed then; nobody knew who he was or what he was doing. But in court yesterday, he was outed. Mr. Guinard, the defendant, knows, "That's the guy who set me up. That's the guy why I'm sitting in here today."

¶13      We find no fundamental error. Guinard addressed how the informant shook during his testimony and went so far as to suggest it showed the informant testified while under the influence of drugs. The prosecutor's rebuttal was a reasonable response to Guinard's argument and was sufficiently linked to the evidence admitted at trial and the reasonable inferences one could draw from that evidence. As noted

above, even the jury questioned the informant about his shaking. The informant testified he was nervous because he feared what people may do to him in the future because of his work as an informant. He further testified informants can end up injured or dead. The informant testified he knew he would have to deal with this for the rest of his life and referred to himself as "the lowest form of life[.]"

¶14 The prosecutor, however, should not have prefaced the argument with the statement that it was the "State's belief[.]" Even so, this comment did not rise to fundamental error. Despite prefacing his argument with this statement, the prosecutor presented his argument in the context of the evidence admitted at trial and the reasonable inferences supported by that evidence; the informant was shaking because of his fear, not because of his drug use as argued by Guinard. The argument was sufficiently linked to the evidence and was not simply a statement of the prosecutor's personal belief and nothing else. *See Corona*, 188 Ariz. at 91, 932 P.2d at 1362. Further, the trial court instructed the jury that what the lawyers say is not evidence. A trial court can cure error that arises from improper vouching by instructing the jury that what the attorneys say is not evidence. *State v. Payne*, 233 Ariz. 484, 512, ¶ 109, 314 P.3d 1239, 1267 (2013). Finally, the court instructed the jury that it was the jury's function to decide the credibility of witnesses and the prosecutor himself argued it was up to the jury to decide what the truth was. Under these circumstances, to preface the argument with "State's belief," while improper, did not deny Guinard a fair trial and did not rise to fundamental error.

¶15 The final instance of alleged vouching occurred when the prosecutor argued:

> *[The informant] was - He testified as to exactly what happened, and he was being truthful*, honest, honest about himself, about things that people aren't very proud of, about his drug use and testifying against someone who he once considered a friend, didn't feel all that confident about himself.

(Emphasis added.) Guinard complains only of the italicized language. This argument, when viewed in its entirety, did not amount to fundamental error. It addressed Guinard's closing arguments regarding the credibility of the informant. The argument was based on the evidence admitted at trial and the reasonable inferences one could draw from that

evidence. Regarding the informant's testimony about "what happened," the informant's version of events was supported by the audio recordings of the controlled buys, the testimony of the deputy who participated in the controlled buys and the expert witness who identified the drugs purchased as methamphetamine. Regarding the informant's testimony about himself, he admitted he was a drug dealer and long-term drug user who worked as an informant to help set up his friends for prosecution simply to save himself and he was not proud of himself or his actions.

¶16 Regarding the prosecutor's assertions that the informant was "truthful" and "honest," a prosecutor may characterize a witness as truthful when the argument is sufficiently linked to the evidence. *See Corona*, 188 Ariz. at 91, 932 P.2d at 1362. The prosecutor should have, however, phrased the argument in terms of how the evidence showed the informant was truthful and honest. The language the prosecutor chose arguably expressed his personal belief or opinion. Even so, given the context of the argument and the evidence supporting it, its relationship to Guinard's closing argument, the court's instructions regarding statements of the attorneys and how it is the jury's function to determine the credibility of the witnesses, this argument did not deny Guinard a fair trial and did not otherwise constitute fundamental error even with the "truthful" and "honest" comments.

II.     Denial of the Motion for Mistrial

¶17 Guinard next argues the trial court erred when it denied his motion for mistrial after the informant testified about material the trial court excluded prior to trial. "A declaration of mistrial is the most dramatic remedy for trial error and is appropriate only when justice will be thwarted if the current jury is allowed to consider the case." *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40, 72 P.3d 831, 839 (2003) (citation omitted) (internal quotation marks omitted). The failure to grant a mistrial is error only if it was a clear abuse of discretion. *State v. Murray*, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995). We will reverse a trial court's decision to deny a mistrial only if it is "palpably improper and clearly injurious." *Id.* (quoting *State v. Walton*, 159 Ariz. 571, 581, 769 P.2d 1017, 1027 (1989), *aff'd,* 497 U.S. 639 (1990)) (internal quotation marks omitted). "This is because the trial judge is always in the best position to determine whether a particular incident calls for a mistrial." *State v. Koch*, 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983). The trial judge is aware of the atmosphere of the trial, the circumstances surrounding the incident, the manner in which any objectionable statement is made, and its possible effect on the jury and the trial. *Id.*

¶18 The trial court granted Guinard's pretrial motion to exclude evidence that Guinard and the informant used and/or possessed methamphetamine together in the past. During its examination of the informant, the State asked, "Why did you identify Mr. Guinard to law enforcement officers?" The informant responded, "Because I bought meth from him before."[3] Guinard objected and moved for a mistrial. The trial court sustained the objection, struck the answer, instructed the jury to disregard the answer and denied the motion for mistrial. The court later denied Guinard's renewed motion, explaining that the incident did not warrant a mistrial because the court sustained the objection, struck the answer and instructed the jury to disregard it. The court further explained the jury had already heard that these types of cases "don't come out of the blue, that they do get names from people in the past based on their activity and their drug involvement[.]"

¶19 The trial court did not abuse its discretion when it denied the motion for mistrial. As noted above, the court struck the answer and instructed the jury to disregard it. We presume juries follow their instructions. *State v. Dunlap*, 187 Ariz. 441, 461, 930 P.2d 518, 538 (App. 1996). We also note the jury had already heard testimony regarding how the informant selected potential suspects, such as Guinard, to identify to the sheriff's department. The deputy testified informants are already associated with people who are involved with and possibly sell drugs. Those informants arrange to buy drugs from people "that they know are selling drugs[.]" During his cross examination of the deputy, Guinard introduced evidence that the informant identified suspects based on whether he had purchased methamphetamine from them in the past or he otherwise believed they would sell him methamphetamine. Therefore, the jury already knew the informant told the sheriff's department about Guinard based on his knowledge that Guinard was involved with drugs, and the informant had either purchased methamphetamine from Guinard in the past or had reason to believe Guinard would sell him methamphetamine. Under these circumstances, the trial court did not abuse its discretion when it held the informant's testimony regarding how he had bought methamphetamine from Guinard in the past did not require a mistrial.

---

[3] The prosecutor claimed he sought only to establish that the informant was not randomly selecting people from whom to purchase methamphetamine and claimed he expected a different answer. The prosecutor never identified the answer he expected.

III.    The Imposition of Consecutive Sentences

**¶20**        Guinard argues we should remand for resentencing because the trial court did not understand it could impose concurrent sentences if it chose to do so.  The court ordered the ten-year sentence it imposed for count 1, transportation of dangerous drugs for sale, to run concurrently with the three-year sentence it imposed for count 2, possession of drug paraphernalia.  The court further ordered the ten-year sentence it imposed for count 3, the second count of transportation of dangerous drugs for sale, to run concurrently with the three-year sentence it imposed for count 4, the second count of possession of drug paraphernalia.  The court ordered the sentences for counts 3 and 4 to run consecutively to the sentences for counts 1 and 2.

**¶21**        When the court ordered the second pair of sentences to run consecutively to the first pair of sentences, it stated:

> [S]o as to the Transportation of Methamphetamine for Sale, each has a Paraphernalia charge with it.    The Paraphernalia charge will run concurrently with each Transportation charge, but the two Transportation charges I do not find a basis to run those concurrently; those will run consecutively to each other for a total of 20 years; each one of those is a flat-time sentence.

Guinard concedes the court had authority to impose consecutive sentences.  *See* A.R.S. § 13-711(A).  Guinard argues, however, that the language "I do not find a basis to run those concurrently" demonstrates not only that the court did not understand it could impose concurrent sentences if it chose to do so, but that the court believed it had to impose consecutive sentences unless it found a "basis" or "good reason" to impose concurrent sentences.

**¶22**        We need not remand for resentencing.  "Trial judges 'are presumed to know the law and apply it in making their decisions.'" *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997) (quoting *Walton*, 497 U.S. at 653).  Except as otherwise provided by law, a trial court may impose consecutive or concurrent sentences when it imposes multiple sentences of imprisonment in the same proceeding.  A.R.S. § 13-711(A).  If the court imposes concurrent sentences, the court must set forth its reasons for doing so on the record.  *Id*.  The language "I do not find a basis

to run those concurrently" does not suggest the court did not understand the applicable law.  This is especially true when viewed in the context of the court's explanation for why it chose not to impose concurrent sentences, which the court provided just before it made the statement Guinard identifies.  In that explanation, the court focused on the fact that Guinard committed the pairs of offenses five days apart.  The court stated:

> However, in considering the time period here – five days in between – the guy came back; you had time to think that about that [sic]; you made the choice to sell again and, based on that, I can't find any basis to run that concurrent, and so that 10-year term will begin upon conclusion of your sentence of 10 years for the Count I Transportation of Methamphetamine for Sale. You'll be given no credit for that, as all the credit applies to your first 10-year sentence.

The court's explanation, viewed in its entirety, shows the court chose to impose consecutive sentences because of the amount of time that passed between the pairs of offenses, not because the court believed it lacked the authority to impose concurrent sentences unless it found a "basis" or "good reason" to do so.

**CONCLUSION**

¶23        We affirm Guinard's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

11