NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KEVIN LEE FRANCOIS, *Appellant*.

No. 1 CA-CR 16-0378
FILED 5-3-2018

Appeal from the Superior Court in Maricopa County
No. CR2010-006046-001 DT
The Honorable Alfred M. Fenzel, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Ballecer & Segal LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**          Kevin Lee Francois appeals his convictions and sentences for burglary in the second degree, kidnapping, aggravated assault, sexual abuse, and multiple counts of sexual assault. Francois argues the superior court erred by denying his motion to appoint substitute trial counsel and precluding defense witnesses. Francois also argues the court erred by denying his motion to suppress DNA evidence. Finally, Francois raises a claim of prosecutorial misconduct. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**          Early in the morning of August 22, 2003, the female victim awoke in her bed with a man on top of her covering her face with a pillow. The man violently physically and sexually assaulted the woman before fleeing. The victim woke up her roommate, who called 9-1-1.

**¶3**          The victim did not see the perpetrator and could not otherwise identify him, although she "thought maybe [she] recognized the voice." A male DNA profile from "dried oral secretions" located on the victim's breast did not match any possible suspects or the profiles stored in a national law enforcement DNA database ("CODIS"). Fingerprints at the crime scene that were not the victim's also did not match prints in a law enforcement database. The investigation went cold.

**¶4**          Seven years after the assault, Francois was arrested in California after a police officer observed him attempting to break into a residence, and pursuant to California law Francois provided a DNA sample

---

[1]          We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Francois. *State v. Harm*, 236 Ariz. 402, 404, n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

for testing. Francois's DNA profile was then added to CODIS, and thereafter, the Maricopa County Sherriff's Office learned of a "hit" on the DNA sample collected from the victim's breast. Arizona law enforcement officers determined that the hit was related to Francois's DNA profile, and they, with the assistance of a California peace officer, obtained a warrant to collect a sample of Francois's saliva and blood. The officers travelled to California and procured the samples, and subsequent testing revealed a "match" between Francois's DNA and the DNA found on the victim's breast.

¶5        The State charged Francois with one count each of burglary in the second degree, a Class 3 felony; kidnapping, a Class 2 felony; aggravated assault, a Class 6 felony; sexual abuse, a Class 5 felony; and eight counts of sexual assault, Class 2 felonies. The jury found Francois guilty as charged and determined the State proved three aggravating factors regarding all counts except the burglary charge, which the jury found two aggravating circumstances. The court imposed aggravated consecutive prison sentences totaling 137.75 years. Francois timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

A.        **The Superior Court Did Not Abuse Its Discretion by Refusing to Substitute New Counsel and by Allowing Hybrid Representation.**

¶6        Almost five years after the indictment, and one month before trial was scheduled to begin, Francois requested appointment of substitute counsel. The superior court denied the request, noting it had allowed Francois to personally file motions and responses, thus Francois "had de facto hybrid representation." The court subsequently accepted Francois's waiver of counsel and permitted him to proceed *pro se* at trial with counsel serving in an advisory capacity.[2] Eventually, Francois asked that advisory counsel assume full representation of his defense.

---

[2]        In another criminal matter involving a similar sexual assault committed against a different victim, Maricopa County Superior Court Cause Number CR2010-006261, Francois waived counsel in 2011. The court dismissed that case without prejudice after Francois's conviction in the instant matter.

**¶7**        Francois argues the court erred by permitting hybrid representation. Francois does not direct us to any objection raised to the superior court regarding his hybrid representation. Instead, the record shows that he participated in his defense by filing numerous detailed *pro se* motions, and participating in pretrial hearings. Further, Francois provides no authority to support his summary assertion that this case "required representation." Arizona does not prohibit hybrid representation and the superior court has discretion to allow it. *State v. Cornell*, 179 Ariz. 314, 325 (1994). On this record, and absent authority that would prohibit hybrid representation under the circumstances presented in this case, we do not find reversible error.

**¶8**        Francois also argues the superior court erred by denying his request for new counsel because Francois and counsel had an irreconcilable conflict. Francois contends he and counsel failed to communicate, and they disagreed over trial strategy.

**¶9**        A superior court ruling regarding a request for substitute counsel "will not be disturbed absent an abuse of discretion." *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005). The Sixth Amendment right to counsel does not guarantee a defendant a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *Cromwell*, 211 Ariz. at 186, ¶ 28. Rather, courts must balance a defendant's right to counsel "against the public interest in judicial economy, efficiency, and fairness." *Cromwell*, 211 Ariz. at 187, ¶ 31. In ruling on a substitution of counsel request, the court considers factors including "whether an irreconcilable conflict exists . . . whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel." *Id.* (quoting *State v. LaGrand*, 152 Ariz. 483, 486–87 (1987)). To demonstrate irreconcilable conflict, "the defendant must present evidence of a 'severe and pervasive conflict with the attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.'" *State v. Hernandez*, 232 Ariz. 313, 318, ¶ 15 (2013).

¶10          At the time Francois requested substitute counsel, defense counsel informed the court he could effectively[3] represent Francois, stating:

> [W]e haven't had too many issues and we've been able to communicate and we've talked at length about his cases and what not. So I don't feel like there's any animosity towards us. But at the same time too I understand where he's coming from. If he wants just more of my time than I'm able to give him in general, I just think that that's a reality that I can't take away from—I have other cases. . . . I know that Mr. Francois and I have a difference of opinion in terms of how many witness interviews need to be done.

Francois responded:

> Well, I'd just like the Court to know that I don't doubt [defense counsel's] effectiveness or his abilities or skills in the courtroom and I know that between [the prosecutor] and yourself and [defense counsel] you guys have a professional relationship and he does handle himself with decorum in the court and can litigate cases. . . . But there is a difference in opinion on who should be interviewed and what should take place. . . . The communication, we do have a good relationship. I respect [defense counsel].

¶11          As the foregoing comments illustrate, Francois and counsel did not have a fractured relationship or a breakdown in communication. At most, they disagreed over "who should be interviewed and what should take place." A difference in proposed trial strategy does not rise to the level of a fractured relationship necessitating appointment of a different lawyer. *Hernandez*, 232 Ariz. at 318, ¶ 15. The record shows the court considered that Francois would experience the same frustration with new counsel regarding counsel's inability to spend all his or her time on Francois's case, the trial had been repeatedly continued, doing so again would inconvenience witnesses, and current counsel was prepared to adequately represent Francois. *See id.* at 321, ¶¶ 33–34 (describing factors the court should consider when evaluating whether appointment of new counsel is

---

[3]      Francois stated his reason for wanting to proceed *pro se* was "ineffective assistance of counsel." To the extent Francois raises an ineffective assistance of trial counsel claim in this direct appeal, we do not address it. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

necessary when a defendant has "something less than irreconcilable conflict" with current counsel). The record supports the superior court's denial of Francois's Motion for New Counsel and the decision to allow Francois to proceed *pro se*. *See State v. Dann*, 220 Ariz. 351, 358, 360, ¶¶ 10, 25 (2009) ("Whether an accused has made an intelligent and knowing waiver of counsel is a question of fact . . . based substantially on the trial judge's observation of the defendant's appearance and actions."). Accordingly, the court did not abuse its discretion by denying Francois's request for substitute counsel.

**B.      The Superior Court Did Not Abuse Its Discretion by Precluding Francois's Alibi Witnesses as a Discovery Sanction for Late Disclosure.**

**¶12**      Four days before trial was scheduled to begin, Francois filed a *pro se* "current witness list," disclosing names of individuals who were purportedly with him on the date of the sexual assault. The State, noting Francois did not previously disclose an alibi defense, moved to preclude such a defense at trial. The court granted the motion.

**¶13**      Francois does not argue that he timely disclosed his supplemental witness list. *See* Ariz. R. Crim. P. 15.2(b)(1), (d)(1) (requiring a defendant within 40 days after arraignment or within 10 days after the prosecutor's disclosure pursuant to Rule 15.1(b), whichever occurs first, to provide a written notice to the prosecutor specifying all defenses, including alibi, as to which the defendant intends to introduce evidence at trial). Instead, without citing authority to support his arguments, he contends preclusion was too drastic a remedy for his discovery violation, and the court should have continued the trial to permit the State "to conduct their due diligence as to the defense witnesses." Francois further argues the State was not prejudiced by his late disclosure because he timely disclosed a third-party defense. We review the court's decision to exclude evidence due to untimely disclosure for abuse of discretion. *State v. Rienhardt*, 190 Ariz. 579, 586 (1997).

**¶14**      Arizona Rule of Criminal Procedure 15.2(c)(1) provides that a defendant must timely disclose the names, addresses, and written or recorded statements of all witnesses the defendant intends to call at trial. Ariz. R. Crim. P. 15.2(c)(1). "[T]he underlying principal of Rule 15 is adequate notification to the opposition of one's case-in-chief in return for reciprocal discovery so that undue delay and surprise may be avoided at trial by both sides." *State v. Stewart*, 139 Ariz. 50, 59 (1984). Where a defendant fails to disclose a witness in a timely fashion, preclusion may be

appropriate. Ariz. R. Crim. P. 15.7(c)(1); *State v. Thompson*, 190 Ariz. 555, 558 (App. 1997).

**¶15**　　　　If a court determines that a sanction is proper for a discovery violation, the court must consider whether a less stringent sanction would suffice before it precludes the evidence. *State v. Meza*, 203 Ariz. 50, 58, ¶ 37 (App. 2002). Further, before precluding evidence as a sanction for a discovery violation, the court must consider "the significance of the information not timely disclosed, the violation's impact on the overall administration of the case, the sanction's impact on the party and the victim, and the stage of the proceedings when the party ultimately made the disclosure." Ariz. R. Crim. P. 15.7(c).

**¶16**　　　　The superior court did not abuse its discretion by excluding Francois's alibi witnesses. The record reflects the court considered the Rule 15.7 factors and specifically found that "the prejudice to the State is too great" to allow Francois to pursue a new alibi defense on the eve of trial. The record supports the court's finding. Additionally, the court concluded, and we agree, that the previously disclosed third-party defense did not provide notice to the State that Francois would raise an alibi defense. A defendant claiming that a third party committed the crimes in question does not necessarily imply that the defendant was not present at the crime scene. Furthermore, the difference in preparation and investigation which would be performed by the State based on an alibi defense, versus that of a third-party defense, is significant. As the State argued during the hearing on their motion to preclude, an alibi defense requires time in order to subpoena financial records, travel and phone records, and interview witnesses to ascertain the truth of their statements regarding both their location, and the defendant's, at the time the crime was committed.

**¶17**　　　　Absent authority to the contrary, we will not conclude that a timely noticed third-party defense also notifies the State that a defendant may raise an alibi defense. Therefore, the superior court could reasonably conclude that precluding Francois's alibi witnesses was a proper remedy for his untimely disclosure. *See State v. Ramos*, 239 Ariz. 501, 505, ¶ 12 (App. 2016) (concluding preclusion of disclosed alibi witness was appropriate remedy for untimely disclosure, despite significance of witness to defendant and lack of defense counsel's bad faith, because late disclosure introduced a new defense theory and "caused a significant disadvantage to the state.").

## C. The Superior Court Did Not Abuse Its Discretion by Refusing to Suppress the DNA Evidence.

¶18 Francois moved pretrial to suppress the DNA evidence, arguing his California arrest was unlawful and the arresting officer conspired with others to establish probable cause in his California attempted burglary case. As a result, Francois argued the warrantless seizure of his DNA violated his Fourth Amendment rights. The superior court denied the motion without conducting an evidentiary hearing.

¶19 Francois contends he was entitled to an evidentiary hearing to determine whether his California arrest was "lawful" and the ensuing warrantless seizure was constitutional. He further summarily asserts that he "had the right to confront the state's witnesses . . . [and] the court impermissibly shifted the burden of proof to Francois to prove his arrest and seizure was unlawful." We review the court's denial of a motion to suppress evidence for an abuse of discretion if it involves a discretionary issue, but we review constitutional and legal issues *de novo. See State v. Gay*, 214 Ariz. 214, 217, ¶ 4 (App. 2007). More specifically, we review the court's decision to deny a motion to suppress without conducting an evidentiary hearing for an abuse of discretion. *See* Ariz. R. Crim. P. 1.9(e) ("[T]he court *may* set a motion for argument or hearing.") (emphasis added); *State v. Peterson*, 228 Ariz. 405, 407, ¶ 6 (App. 2011).

¶20 The Fourth Amendment prohibits police from making unreasonable searches and seizures, *Terry v. Ohio*, 392 U.S. 1, 9 (1968), and the exclusionary rule generally prevents the introduction of evidence seized in violation of a person's Fourth Amendment rights, *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). Subject to some exceptions, a warrantless search is *per se* unreasonable. *State v. Branham*, 191 Ariz. 94, 95 (App. 1997). As pertinent here, if probable cause exists to support an arrest,[4] the United States Supreme Court has rejected the argument that the Fourth Amendment is violated by a law that authorizes the warrantless seizure of a suspect's DNA. *Maryland v. King*, 569 U.S. 435, 449–50 (2013).

¶21 The superior court did not abuse its discretion by denying the suppression motion without conducting an evidentiary hearing. The court

---

[4] "To make a warrantless arrest, a police officer must have probable cause to believe both that a crime has been committed and that the person to be arrested committed the crime." *State v. Keener*, 206 Ariz. 29, 32, ¶ 15 (App. 2003).

considered the arresting officer's sworn testimony given at the probable cause and suppression hearings in the California case. Based on that testimony, the superior court concluded, as did the California court that addressed the same arguments Francois raised in support of his suppression motion, that the arrest in California was supported by probable cause. Although the superior court did not conduct an evidentiary hearing, it did consider materials Francois submitted to support his argument that the California officers conspired against him, and the court determined those materials did not indicate a conspiracy as Francois alleged. While a hearing would have allowed the court to assess the credibility of the officer involved, and would have avoided relying on the previous hearing in California, we cannot say that it was an abuse of discretion for the superior court to deny a suppression hearing. The court acted within its discretion by implicitly determining Francois failed to present a *prima facie* suppression issue requiring an evidentiary hearing on the motion to suppress. *See State v. Nilsen*, 134 Ariz. 433, 435–36 (App. 1982) ("The trial judge did not err in refusing to hold an evidentiary hearing. . . . The record shows that he patiently and carefully reviewed the appellants' offers of proof and arguments. . . . No further hearing was necessary or desirable."), *aff'd as modified*, 134 Ariz. 431 (1983); *see also* Ariz. R. Crim. P. 16.2(b)(2)(A) (requiring a defendant to allege specific circumstances and establish a *prima facie* case supporting suppression of evidence before the State has the burden of proving lawfulness of seizure).[5]

**¶22** To the extent Francois argues the superior court erred by denying his suppression motion because the California statute requiring arrested persons to provide a DNA sample is unconstitutional, we summarily reject the argument. The record reflects that, although Francois initially raised this issue before trial, he abandoned it after the United States Supreme Court issued its decision in *King*. *See King*, 569 U.S. at 449 (2013) (collecting and analyzing a suspect's DNA pursuant to Maryland's DNA Collection Act is a legitimate booking procedure following an arrest supported by probable cause and does not violate the Fourth Amendment). In addition, the California Supreme Court has since found their statute to be constitutional. *People v. Buza*, 413 P.3d 1132 (Cal. 2018).

**¶23** Regarding Francois's assertion that the court's failure to conduct an evidentiary hearing violated his confrontation rights, we do not

---

[5] Because Francois failed to establish a *prima facie* case, we reject his implication that the State had the burden to prove the seizure of his DNA complied with the Fourth Amendment.

address it because Francois fails to present a developed argument supported by authority and has thereby waived the issue. *See* Ariz. R. Crim. P. 31.10(a)(7)(A) ("An appellant's opening brief must set forth . . . appellant's contentions with supporting reasons for each contention, and with citations of legal authorities . . . on which the appellant relies."); *State v. Moody*, 208 Ariz. 424, 452, ¶ 101, n.9 (2004) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised.") (quoting *State v. Carver*, 160 Ariz. 167, 175 (1989)); *State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001) (issue waived because defendant failed to develop argument in his brief).

## D.     The State Did Not Engage in Prosecutorial Misconduct.

**¶24**          During closing arguments, defense counsel repeatedly challenged the DNA evidence, saying it "sucks" and referring to the evidence as "bogus." During the State's rebuttal argument, the following transpired:

> [PROSECUTOR]: So ask yourself this: You heard evidence in this case from multiple sources that all of the forensic evidence in this case, the bedding, all of the DNA had all been released to the defense for independent testing. You heard from [the DNA unit criminalist] that he released evidence from the lab. He coordinated directly with another lab to release the evidence to them for independent testing for the defense.
>
> Now, if this is such—if DNA sucks and it's bogus, what on earth are they doing asking for this evidence to be released for independent testing?
>
> [DEFENSE COUNSEL]: I am going to object as improper burden shifting. I think it is improper argument, judge, for the record.
>
> THE COURT: I don't believe it is burden shifting but I think you should move on.

**¶25**          Francois argues the foregoing rebuttal argument constituted improper vouching for DNA testing. We review for fundamental error because Francois did not object at trial on this basis. *See State v. Lopez*, 217 Ariz. 433, 434–35, ¶ 4 (App. 2008) (an objection on a ground other than the one asserted to the appellate court does not preserve the issue for appeal). Thus, Francois bears the burden to establish that error occurred, that the

error was fundamental, and that the error resulted in prejudice. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005). That is, Francois must show that "(1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [Francois] a fair trial.'" *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quoting *State v. Anderson* (*Anderson II*), 210 Ariz. 327, 340, ¶ 45 (2005)).

**¶26**      To determine whether the prosecutor's argument was improper, we consider whether he called the jury's attention to matters it should not consider. *State v. Roque*, 213 Ariz. 193, 224, ¶ 128 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267, ¶¶ 13–14 (2017). Improper prosecutorial vouching consists of two types: "(1) where the prosecutor places the prestige of the government behind its witness; (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent*, 159 Ariz. 418, 423 (1989). The first type of vouching consists of personal assurances of a witness's truthfulness. *State v. King*, 180 Ariz. 268, 277 (1994). The second type involves prosecutorial remarks that bolster a witness's credibility by reference to material outside the record. *Id.* Francois argues that the challenged argument "inferred that Francois had retested the bedding and shirt inferring they contained DNA evidence, something never testified to by any witness. Piggybacking on this inference, the state argued that government's result [sic] was confirmed by none other than Francois's own handpicked lab." Thus, Francois contends the prosecutor engaged in the second type of vouching.

**¶27**      The prosecutor did not refer to matters outside the record to support the State's argument. The evidence established that Francois requested independent DNA testing of the bedding from the crime scene and the saliva sample collected from the victim's body. To rebut Francois's argument that the DNA evidence and test results presented by the State were unreliable, the prosecutor could, therefore, properly refer to the defense's request for independent DNA testing. *See State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160 (1987) ("It strikes us as elemental fairness to allow the State to comment upon the defense's failure to adduce potentially exculpatory evidence to which defendant had access when defendant is attacking the accuracy of the State's evidence."); *State v. Martinez*, 130 Ariz. 80, 82–83 (App. 1981) (no misconduct where prosecutor commented at trial about defendant's failure to present evidence on how a stolen speaker cover got into his car trunk when the prosecutor made those statements as a rebuttal to the defendant's argument that the speaker cover had been found and not stolen); *see also State v. Kerekes*, 138 Ariz. 235, 239 (App. 1983) (because purported misconduct occurred during the State's rebuttal

argument, this court views the challenged statement in the context of defendant's closing argument). Furthermore, even though the prosecutor did not comment on Francois's failure to provide the results of an independent DNA test, such an additional inference would also not be considered vouching. *See McDougall*, 153 Ariz. at 160 (prosecutor was permitted to comment on defendant's failure to produce evidence concerning an independent breath test when defendant challenged the accuracy of the State's test results). While we recognize the fine distinction between commenting on a defendant's failure to present evidence and commenting on evidence outside the record, we hold no vouching occurred in this case. *See id.* ("Such comment is permitted by the well-recognized principle that the nonproduction of evidence may give rise to the inference that it would have been adverse to the party who could have produced it.").

¶28 Finally, even if we were to hold the prosecutor's comments in closing to constitute vouching, the error would not be fundamental. *See Henderson*, 210 Ariz. at 567, ¶ 20. The DNA evidence presented at trial showed a match between Francois's DNA profile and that of the saliva found on the victim's breast following the assault, and the victim testified that she recognized Francois's voice during trial as the same one she heard during the assault.

## CONCLUSION

¶29 Francois's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA