932 P.2d 1356

**STATE of Arizona, Appellee,**

v.

**James Morgan CORONA, Appellant.**

**Nos. 1 CA–CR 95–0701, 1 CA–CR 96–0250.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 11, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Dean M. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

In this consolidated proceeding, James Morgan Corona ("defendant") appeals his convictions for threatening and intimidating two people, class 4 felonies, and the subsequent revocation of his probation. We agree with the defendant that the trial court committed reversible error by denying his request for an instruction on threatening and intimidating as a class 1 misdemeanor. Accordingly, in 1 CA–CR 95–0701, we reverse his convictions and remand this case to the court for further proceedings. In 1 CA–CR 96–0250, we vacate the court's revocation of probation since it was based solely on the convictions reversed in 1 CA–CR 95–0701.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 1994, the defendant confronted A.L., a female friend, outside her Phoenix home.[1] He claimed that T.C., A.L.'s boyfriend, had just fired shots at the defendant's house and he demanded that A.L. tell him T.C.'s address. When A.L. refused, the defendant told her that, if she did not reveal the address, she would "take the blame" for T.C. The defendant also told A.L. that she had to choose sides and that, if she chose T.C.'s side, she would have to "watch her back." She told investigating Phoenix Police Detective Christopher Luebkin that the defendant specifically told her to choose between her loyalty to T.C. and "disrespecting . . . Hollywood," his street gang.

A.L.'s aunt, B.L., went outside the house she and A.L. shared when she heard the defendant yelling and she overheard the defendant's threat to A.L. B.L. told the defen-

dant to stop shouting, addressing him as "boy." According to A.L., the defendant responded: "I will show you what a boy could do" and left. Approximately one hour later, two gunshots were fired into the house.

When questioned about the incident, the defendant admitted that he talked to A.L. after T.C. fired shots at the defendant's house. According to Luebkin, the defendant told A.L. that he wanted to "retaliate" against T.C. but wanted to do so lawfully by involving the police. The defendant also told Luebkin that he had demanded only that A.L. "choose" between him, as her former boyfriend, and T.C. He denied threatening A.L. or B.L.

At trial, the defendant testified that he was scared because T.C. had shot at his house and that he had demanded that A.L. reveal T.C.'s address so that he could contact the police. The defendant admitted that he told A.L. to choose between him and T.C. However, he denied that he told A.L. that she was "disrespecting Hollywood," adding that the allegation that he threatened to involve the Hollywood gang in retaliation was implausible because B.L.'s family was a "main family in the Hollywood gang." A.L. no longer recalled whether the defendant invoked "Hollywood."

The jury found the defendant guilty of threatening and intimidating A.L. and B.L., class 4 felonies. The trial court placed the defendant on three years of probation. The defendant appealed. In February 1996, a petition to revoke the defendant's probation was filed. Following a violation hearing, the trial court revoked the defendant's probation and sentenced him to concurrent, presumptive terms of 2.5 years imprisonment. He appealed and we consolidated both of his appeals.

The defendant raises the following issues on appeal:

1. Whether the trial court erred in denying his request for an instruction on

---

1. The facts and inferences therefrom are given in the light most favorable to upholding the verdicts. *State v. Atwood*, 171 Ariz. 576, 596, 832

P.2d 593, 613 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). The victims' initials are used to protect their privacy.

threatening and intimidating as a class 1 misdemeanor;

2. Whether the prosecutor committed misconduct in closing argument by commenting on the defendant's failure to call an expert witness on gangs;

3. Whether the court committed fundamental error by instructing the jury on the defendant's flight and on consideration of evidence of prior bad acts;

4. Whether the prosecutor committed misconduct, amounting to fundamental error, by vouching for witnesses and in misdefining "reasonable doubt" during closing argument;

5. Whether the court erred in denying his motion for a mistrial based on evidence of his prior arrests;

6. Whether fundamental error occurred when the state's gang expert delivered an improper opinion;

7. Whether the jury's verdicts were the product of undue pressure; and

8. Whether the court erred when it received the verdicts in the defendant's absence.

In the appeal from the revocation of his probation, defense counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), asking that we review the record for reversible error. The defendant was permitted to file a supplemental brief *in propria persona* but he did not do so.

## DISCUSSION

A. *Denial of Lesser-included-offense Instruction*

■ The defendant argues that the trial court erred in denying his requested jury instruction on threatening and intimidating

**2.** A.R.S. section 13–1202 provides, in pertinent part:
A. A person commits threatening or intimidating if such person threatens or intimidates by word or conduct:
 1. To cause physical injury to another person or serious damage to the property of another; or
 * * *
 3. To cause physical injury to another person or damage to the property of another in

as a class 1 misdemeanor under ARIZ. REV. STAT. ANN. ("A.R.S.") section 13–1202(A)(1) and (B), a lesser-included offense of the class 4 felony under section 13–1202(A)(3) and (B).[2] To decide if the defendant was entitled to the instruction, we first determine whether the misdemeanor was a lesser-included offense of the felony. According to *State v. Gooch*, 139 Ariz. 365, 366, 678 P.2d 946, 947 (1984), such an instruction is warranted if (1) the included offense is always a constituent part of the greater offense or (2) if the charging document described the lesser offense even though it would not always form a constituent part of the greater offense. *See also State v. Magana*, 178 Ariz. 416, 418, 874 P.2d 973, 975 (App.1994).

■ The state argues that misdemeanor threatening and intimidating is not always a lesser-included offense because it may be committed by a threat to cause "serious" damage. It continues that, because a threat to cause "serious" damage is not required under section 13–1202(A)(3), the alleged lesser offense contains an element not contained in the greater. The state ignores, however, the second part of the *Gooch* test: whether "the charging document described the lesser offense." 139 Ariz. at 366, 678 P.2d at 947. In this case, the information charged the separate offenses against A.L. and B.L. in identical terms:

JAMES M. CORONA, on or about the 30th day of October, 1994, *threatened or intimidated by word or conduct to cause physical injury to [victim]*, in order to promote, further or assist in the interests of or to cause, induce, or solicit another person to participate in a criminal street gang, a criminal syndicate or a racketeering enterprise, in violation of A.R.S. §§ 13–1202, 13–702, 13–702, [sic] and 13–801.

order to promote, further or assist in the interests of or to cause, induce or solicit another person to participate in a criminal street gang. . . .
B. Threatening or intimidating pursuant to subsection A, paragraph 1 . . . is a class 1 misdemeanor. Threatening or intimidating pursuant to subsection A, paragraph 3 is a class 4 felony.

(Emphasis added.) Thus the information clearly described the misdemeanor.[3]

█ Further, a lesser-included offense instruction is required if the jury could rationally find that the state failed to prove the element of the greater offense that distinguished it from the lesser offense. *State v. Kinkade,* 147 Ariz. 250, 253, 709 P.2d 884, 887 (1985). The jury in this case could have made that distinction. Although the defendant denied at trial that he had threatened A.L. and B.L., other evidence, such as his testimony that retaliating against a Hollywood "gang family" was impossible, supported the contention that any threats which he made stemmed from personal, not gang-related, animus toward T.C. As a result, the trial court committed reversible error in refusing to instruct the jury on misdemeanor threatening and intimidating. *See Magana,* 178 Ariz. at 418, 874 P.2d at 975.

### B. Remaining Issues

We will address such of the remaining issues as warrant comment given that further proceedings are necessary.

#### 1. Comment on Failure to Call Expert Witness

During the prosecutor's rebuttal closing argument, the following exchange occurred:

MISS DAIZA [PROSECUTOR]: The State provided you with a gang expert who testified about the subculture of gangs. What motivates them. How they're composed. The activities that they do. They thrive on violence.

The defense did not provide you with any expert who testified.

MR. AGAN [DEFENSE COUNSEL]: Your Honor, I'll object to that. Improper evidence. We have no burden.

MS. DAIZA: Your honor, there's case law that allows the State to argue that the defense did not provide an expert.

THE COURT: You may proceed.

MS. DAIZA: They did not provide you with an expert witness to counter what

Detective Luebkin said. So you will decide how much weight to give to Detective Luebkin's testimony as far as his experience in the area of gangs, his credentials, his contacts with gang members, his investigation of gang-motivated crimes.

On appeal, the defendant complains that the trial court erred in failing to sustain his objection to the prosecutor's comment on his failure to call an expert witness. The state responds that, under *State ex rel. McDougall v. Corcoran (Keen),* 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987), the prosecutor was permitted to comment on the defendant's failure to present exculpatory evidence.

█ In *Keen,* the supreme court held that the state could properly comment on a defendant's failure to introduce the results of testing a breath sample he had received after his arrest for driving under the influence of an intoxicant. *Id.* The court found that "[s]uch comment is permitted by the well recognized principle that the nonproduction of evidence may give rise to the inference that it would have been adverse to the party who could have produced it." *Id.* However, in *Gordon v. Liguori,* 182 Ariz. 232, 236, 895 P.2d 523, 527 (App.1995), a medical malpractice case, this court held that the trial court did not err in precluding comment by the plaintiffs on the defendants' failure to call experts. One reason that the restriction on such comment was proper was "because defendants did not call the subject experts, the jury knew nothing about them and there was no need to explain why they did not testify." *See also Spraker v. Lankin,* 218 Kan. 609, 545 P.2d 352, 357 (1976) (court committed reversible error when it permitted defense counsel, in closing arguments, to comment on plaintiff's failure to call an expert who had been consulted, but who was not named as a witness and whose existence was not disclosed by the evidence at trial). This accords with the general rule that closing arguments must be based on facts that the jury is entitled to find from the evidence and not on extraneous matters not received in evidence.

---

**3.** Although the jury instruction tendered by the defendant included a reference to a threat "to cause serious damage to the property of anoth-

er," defense counsel conceded that that language should be deleted.

*State v. Dumaine*, 162 Ariz. 392, 402, 783 P.2d 1184, 1194 (1989).[4] Because there was no mention during the trial that the defendant had retained or even consulted an expert witness on gangs, unlike *Keen* in which the defendant had received a sample for the very purpose of independent consultation, the prosecutor's comment was improper and the defendant's objection should have been sustained.

### 2. Flight or concealment instructions

█ Neither the instruction on flight nor the one on concealment should have been given, although the defendant failed to object. The only evidence regarding the defendant's exit was his testimony that, after talking to A.L. and B.L., he got on his bicycle and left. This evidence was insufficient to support an inference of flight at all, let alone a "reasonable inference that the flight or attempted flight was open, such as the result of an immediate pursuit." *State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976). There was no evidence at all of concealment.

### 3. Instruction on consideration of prior bad acts

The defendant also complains about the following instruction, Recommended Arizona Jury Instruction—Criminal ("RAJI") 26:

> Evidence of other bad acts of the Defendant has been admitted into evidence in this case. Such evidence is not to be considered by you to prove the character of the Defendant or to show that he committed the offense charged. It may, however, be considered by you regarding the defendant's motive, opportunity, intent, prepara-

tion, plan, knowledge, identity or absence of mistake or accident.

He argues that giving the instruction amounted to fundamental error because the instruction's reference to "other bad acts" rather than simply "other acts" constituted an unsuitable comment on the evidence. *See* Ariz. Const. art. 6, § 27.

█ The instruction closely parallels Rule 404(b), ARIZ. R. EVID.,[5] and seeks to prevent the jury from improperly considering other acts unrelated to the crime(s) for which the defendant is being tried. Significantly, however, Rule 404(b) does not, in fact, include the word "bad" in modifying the word "acts," thereby distinguishing "acts" from "crimes" or "wrongs," which two words implicitly convey malfeasance. Indeed, the "act" in question need not be criminal or wrongful. *See State v. Castaneda*, 150 Ariz. 382, 390, 724 P.2d 1, 9 (1986); *State v. Passarelli*, 130 Ariz. 360, 363–64, 636 P.2d 138, 141–42 (App.1981); *see also* Ariz. R.Crim. P. 15.1(a)(6). To then add "bad" to "acts" in the instruction thus constitutes a judicial comment on the evidence because, after prosecution evidence of those prior acts has been admitted, the defense has the opportunity to rebut or explain the earlier conduct, i.e., whether it was "bad." The supreme court has advised against instructions which "might cause jurors to view the evidence 'in accordance with what they believe to be the court's judgment as to its weight rather than their own.'" *Rosen v. Knaub*, 175 Ariz. 329, 331, 857 P.2d 381, 383 (1993) (quoting *Security Benefit Ass'n v. Small*, 34 Ariz. 458, 468, 272 P. 647, 651 (1928)). By including the word "bad," the instruction becomes an improper judgment about conflicting evidence,

---

**4.** Analogous support for this conclusion also comes from Rule 15.3(c), Arizona Rules of Criminal Procedure, which states:

> Failure To Call a Witness or Raise a Defense. The fact that a witness' name is on a list furnished under this rule, or that a matter contained in a notice of defenses is not raised, shall not be commented upon at the trial, unless the court on motion of a party, allows such comment after finding that the inclusion of the witness' name or defense constituted an abuse of the applicable disclosure rule.

Although the rule was inapplicable in this case because no expert was disclosed by defendant,

there appears to be no sound policy reason to allow comment on failure to produce an undisclosed expert when comment on a disclosed expert is presumptively improper.

**5.** Rule 404(b) provides: "Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

although in most cases, as in this one, the error will not be fundamental given the nature of the acts admitted in evidence and the context of the case.

### 4. Closing Argument

The defendant claims that the prosecutor committed misconduct in two statements which she made to the jury during closing argument. Again, no objections were raised at trial.

#### a. Argument regarding reasonable doubt

During her rebuttal closing argument, the prosecutor stated that "the State submits to you that if you find the Defendant not guilty you need to have a reason in order to find reasonable doubt." The defendant argues that this remark shifted the burden of proof to him.

 In saying that to "find the Defendant not guilty you need to have a reason," the prosecutor erroneously suggested that the jurors had to have a justification to find the defendant not guilty. On the contrary, in order to find the defendant not guilty, jurors simply needed to possess a doubt that the defendant was guilty and that doubt must have been based upon reason. The requirement that a doubt possessed by jurors be "reasonable" does not mandate that the jurors find an affirmative reason to support their finding of not guilty; rather, the doubt must not conflict with reason or sound judgment. To say that the jurors must have a "reason in order to find reasonable doubt" adds an extra stratum to the jury's analysis, one that is neither necessary nor permissible.

#### b. Prosecutorial vouching

 The defendant claims that the prosecutor impermissibly vouched for the state's witnesses when she asserted that the victims and police officers testified "truthfully." [6] The supreme court has recognized two forms of impermissible prosecutorial vouching: "(1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *Dumaine*, 162 Ariz. at 401, 783 P.2d at 1193 (1989). Out of context, the prosecutor's comment could be interpreted to have improperly placed "the prestige of the government" in support of the credibility of the victims and the police officers. In context, however, the prosecutor made clear that it was for the jury to "determine the credibility of" the witnesses and her characterization of the witnesses as truthful was sufficiently linked to the evidence.

### 5. Denial of Mistrial Motion

Prior to trial, the court granted the state's motion in limine to permit the introduction of evidence that, prior to the offenses, the defendant acknowledged membership in the Hollywood gang. During direct examination by the state, Phoenix Police Officer Michael Adams testified that the defendant had admitted that he was a gang member. On cross-examination, when defense counsel inquired why the officer's arrest report did not reflect that conversation, Adams responded that the defendant's gang affiliation was not material to the offense. On redirect examination, the prosecutor elicited the fact that the defendant had been arrested for trespassing and inhaling toxic vapors.

> The victims testified, and they also truthfully told you what they recall. When they felt that information was omitted from the report they told you that. They also told you that their memories were a lot better in October of 1994 and in November of 1994 when the police officers went to their house and spoke to them as opposed to today. And that would be something that your common sense would tell you that's reasonable.

---

**6.** The prosecutor argued:
> In determining a witness's statement, when they [sic] testified, you must determine the credibility of that witness. And while you ladies and gentlemen will determine who is telling the truth, the State will also ask you to determine who has a reason to lie when they get up and they testify.
>
> The officers have absolutely no personal interest in making any misrepresentations to you. They testified truthfully about what was said between them and the Defendant. And they have no motive to lie.

A similar exchange occurred after Phoenix Police Officer Philip Lanoue testified that the defendant had admitted gang membership to him. On cross-examination, defense counsel established that this conversation with the defendant was not recorded on the field interrogation card. On redirect examination, without objection, Lanoue testified that he believed that the information on the card was accurate because the defendant had admitted gang membership during "previous contacts on different incidences [sic] at his house and previous arrests."

■ The defendant subsequently moved for a mistrial, arguing that the officers' testimony regarding his prior arrests exceeded the limits of the trial court's ruling regarding his gang membership. The prosecutor responded that her questions on redirect examination were proper given counsel's attempts to impeach the witnesses. The court denied the motion. However, without defense objection, it then cautioned the jury:

> Now, you are not to consider any reference to the defendant having been previously arrested and you are to disregard any of the previous witnesses [sic] testimony wherein the witness referred to a previous arrest of the defendant.

The court delivered a substantially similar admonition during final instructions to the jury. On appeal, the defendant contends that the court erred in denying his motion.

The officers' references to the defendant's arrests were admissible to rebut the suggestion that they had improperly recorded his admissions of gang membership. Moreover, the trial court twice cautioned the jury to disregard the testimony about the arrests. These instructions adequately remedied any unfair prejudice from the testimony.

■ We also reject the argument that the reference to the defendant's arrests as a juvenile violated his right to privacy on juvenile matters safeguarded by A.R.S. section 8–207(C) [7] and by Rule 609(d), Ariz. R. Evid. Reference to the circumstances of the defendant's arrests did not implicate section 8–

207(C), which precludes only the use of juvenile court dispositions. *Matter of Estate of R.C.*, 167 Ariz. 246, 248, 805 P.2d 1067, 1069 (App.1990). Rule 609(d) is inapplicable because this case did not involve the use of a "juvenile adjudication" to impeach the defendant.

### 6. Admission of Expert Opinion

During the state's redirect examination of Luebkin, the following exchange occurred:

[PROSECUTOR]: Can a gang member promote his or her gang by merely stating the name of the gang in making the threats?

A: Yes.

Q: Can you explain to us how that occurs?

A: Basically, in promoting the gang, one gang member, especially in the loosely-knit gangs—when I say "loosely knit," loosely organized. They do tend to be tightly organized, but they are loosely knit. One member, for lack of a better word, would have the authority to make a threat on behalf of that gang and, in doing so, can promote his status in the gang or the status of the gang within the community or neighborhoods.

Q: Does a gang member—when making threats and in using the name of the gang, is that used to further intimidate the witness or a victim?

A: Yes. In fact, that would be, in my opinion, the sole reason to use the gang name.

■ Although the defendant did not object to this testimony, he argues on appeal that it constituted "advice to the jury on how to decide the case." *See State v. Moran*, 151 Ariz. 378, 383, 728 P.2d 248, 253 (1986). We find no error. The principal issues in the case were whether the defendant made any threat, whether he invoked the name of the Hollywood gang at all and, if so, for what purpose. The testimony was relevant expertise.

---

7. The provision states:
 C. The disposition of a child in the juvenile court may not be used against the child in any

case or proceeding in any court other than a juvenile court, whether before or after reaching majority, except as provided by § 28–444.

We need not reach the arguments alleging the coercion of the jury verdict and the voluntariness of the defendant's absence at the return of the verdict. These issues are not likely to reoccur.

Due to our disposition of the appeal of the defendant's convictions, we also need not address the issues raised in the defendant's supplemental brief concerning the revocation of his probation.

### CONCLUSION

In 1 CA–CR 95–701, the defendant's convictions are reversed. The matter is remanded to the trial court for further proceedings consistent with this decision. In 1 CA–CR 96–0250, the defendant's revocation of probation is vacated.

SULT, P.J., and VOSS, J., concur.