NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELIAS DEWAYNE JOHNSON, *Appellant.*

No. 1 CA-CR 15-0351
FILED 8-25-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2013-004934-001
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

_____

**P O R T L E Y**, Judge:

¶1          Elias Dewayne Johnson appeals his conviction and sentence for burglary in the third degree.  For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2          In an effort to combat bicycle thefts, police left a "bait bike" (bike) in the back of an unattended city-owned pickup truck in downtown Phoenix.  While observing the truck from across the street, Officer Colebeck observed a black male wearing a black jacket with white striped sleeves take the bike out of the truck and ride away.  The officer radioed Officer Kimble, who was nearby in a patrol vehicle, and provided a description of the suspect.

¶3          Officer Kimble observed the suspect, who was later identified to be Johnson, riding the bike.  The officer, with Officer Colebeck observing, stopped and arrested Johnson.  When asked where he had found the bike, Johnson said he found it abandoned on the ground, and demanded that it be returned to him upon his release.

¶4          Johnson was charged with burglary in the third degree, a class 4 felony.  At trial, he testified he "was just walking" when he was approached by police officers and arrested for stealing a bike.  He denied taking "any bicycle that evening."

¶5          The jury found Johnson guilty as charged.[2]  The State later proved Johnson had six prior felony convictions from Colorado.  Johnson

_____

[1] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Valencia*, 186 Ariz. 493, 495, 924 P.2d 497, 499 (App. 1996).
[2] The jury rejected the State's aggravating factor that Johnson committed the offense as consideration for the receipt of or in the expectation of receiving pecuniary value.

was sentenced to an eight-year prison term as a category 3 repetitive offender.  Johnson timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[3]

**DISCUSSION**

**¶6**        Johnson raises three issues on appeal, two of which we address in this decision.[4]  Specifically, he first argues it was fundamental error for the State to elicit testimony from a police officer that he did not believe Johnson's statements at the scene.  Second, he contends there was prosecutorial misconduct warranting reversing his conviction and sentence.

**I.      Opinion Testimony Regarding Johnson's Truthfulness**

**¶7**        On redirect examination, Officer Kimble testified, in relevant part, as follows:

Q.  Now, [defense counsel] mentioned that the defendant never admitted to you that he stole the bike; do you remember that?

A.  Yes.

. . .

Q.  Even though the defendant didn't tell you that he committed the crime, did you find the defendant's statements to you credible?

. . .

A.  No, I did not.

Q.  And why didn't you find the defendant's statements to you credible?

---

[3] We cite the current version of the statute unless otherwise noted.

[4] In a separate opinion filed contemporaneously with this memorandum decision, we address Johnson's third issue of whether it was fundamental error to sentence him as a repeat offender.

A. Based upon the fact that Officer Colebeck observed him remove the bike from the vehicle, and the fact that he was in possession of the vehicle. Of all things that occurred within moments of me taking him into custody, I felt that was not credible.

¶8            Johnson argues it was fundamental error to allow Officer Kimble to testify on redirect examination that Johnson's explanation at the time he was arrested was not credible. Johnson contends the testimony amounted to an improper opinion and comment on his truthfulness. The State concedes error, but argues the error does not rise to the level of fundamental reversible error.

¶9            To obtain relief under fundamental error review, Johnson has the burden to show that error occurred, the error was fundamental, and that he was prejudiced thereby. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 607 (2005). Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24, 115 P.3d at 608. The showing required to establish prejudice "differs from case to case," i*d.* at ¶ 26. But a defendant "must show that a reasonable jury, applying the appropriate standard of proof, could have reached a different result," *Id.* at 569, ¶ 27, 115 P.3d at 609. We will not presume prejudice where none appears affirmatively in the record. *State v. Trostle*, 191 Ariz. 4, 13, 951 P.2d 869, 878 (1997); *see State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006).

¶10            We agree with the State's concession on appeal that the officer's opinion about Johnson's veracity at the time of the arrest was inadmissible. *See State v. Martinez*, 230 Ariz. 382, 385, ¶ 11, 284 P.3d 893, 896 (App. 2012) ("Arizona prohibits testimony from an expert or a lay witness that opines as to the truthfulness of a statement by another witness.") (citation omitted). The erroneous admission of the testimony, however, did not go to the foundation of Johnson's defense, take away a right essential to his defense, or otherwise deny him a fair trial.

¶11            Although Johnson told the officer he found the bike on the ground, his defense at trial was that he never possessed the bike. And the officer's testimony on redirect occurred after the officer had been cross-examined about the allegedly deficient police investigation; the officer did not collect DNA or fingerprints from the bike, did not produce video documentation of the incident, and did not record Johnson's statements at the scene. As a result, even though the questions and answers on redirect

were improper, given Johnson's defense and the other evidence, we find that testimony about Johnson's veracity is not fundamental error.

**¶12**          We also find that Johnson has not shown prejudice resulting from Officer Kimble's answers to the questions.  Johnson offered two contradictory explanations for possessing (or not) the bike – one to the officer and another to the jury.  The officer's opinion testimony was unnecessary for the jury to conclude that Johnson lied either at the time of his arrest or when testifying, s*ee State v. Boggs*, 218 Ariz. 325, 335, ¶ 42, 185 P.3d 111, 121 (2008).[5]

**¶13**          Further, absent Officer Kimble's opinion testimony, it is doubtful a reasonable jury would have reached a different result.  The record establishes Officer Kimble apprehended Johnson in possession of the bike almost immediately after he was observed taking it out of the truck.  As a result, Johnson has failed to establish prejudice resulting from the admission of Officer Kimble's testimony.  Consequently, the improper testimony is not reversible error that requires a new trial.

## II.    Prosecutorial Misconduct

**¶14**          Johnson also argues two acts of prosecutorial misconduct warrant a new trial.  He first contends the prosecutor engaged in prosecutorial misconduct by eliciting Officer Kimble's inadmissible opinion.  He also argues the prosecutor vouched for both officers' testimony during the State's rebuttal closing argument, and denied him a fair trial.  Because Johnson did not object at the time of the question or during the rebuttal argument, we review his argument for fundamental error. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.  "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error."  *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991).

### A

**¶15**          To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

---

[5] The court properly instructed the jury that it had to find the facts from all of the evidence produced; had to determine the voluntariness of Johnson's statements, and had to determine the credibility of the witnesses.

Reversal on the basis of prosecutorial misconduct requires that the conduct be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997) (citations omitted). A defendant must demonstrate that "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict[.]" *State v. Moody*, 208 Ariz. 424, 459, ¶ 145, 94 P.3d 1119, 1154 (2004) (citations omitted).

**¶16** The prosecutor's question to Officer Kimble about Johnson's veracity, as noted, ¶ 10, *supra*, was clearly improper. However, asking the question did not rise to the level of professional misconduct because nothing in the record suggests the prosecutor asked the question to elicit the testimony knowing it was improper. *See Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984) (prosecutorial misconduct is not merely "legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial."). Moreover, the State did not refer to the officer's answer during closing arguments. Consequently, and given that the question and answer did not result in an unfair trial, we find no prosecutorial misconduct warranting a new trial.

**B**

**¶17** Impermissible vouching occurs: (1) when the prosecutor places the prestige of the government behind its witnesses, and (2) when the prosecutor suggests that information not presented to the jury supports the witness's testimony. *State v. Doerr*, 193 Ariz. 56, 62, ¶ 24, 969 P.2d 1168, 1174 (1998) (citation omitted). The first type of vouching consists of personal assurances of a witness's truthfulness; the second consists of remarks that bolster a witness's credibility by references to matters outside the record. *State v. Dunlap*, 187 Ariz. 441, 462, 930 P.2d 518, 539 (App. 1996) (citation omitted).

**¶18** Johnson contends the prosecutor committed the first form of vouching by stating during rebuttal argument: "The truth is what the officers testified to. They were under oath. They had to tell you the truth. They had to tell you that this is what happened; this is what I observed." The prosecutor's statements do not amount to impermissible vouching because they are not the prosecutor's *personal assurance* of the officers' veracity.

¶19        However, even if the challenged statements could be deemed as a personal assurance of the officers' credibility, the statements were proper comments on the evidence. "Wide latitude is given in closing arguments and counsel may comment on the evidence and argue all reasonable inferences therefrom." *State v. Amaya–Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990) (citation omitted). When a prosecutor's characterization of a witness as truthful is "sufficiently linked to the evidence," it is not deemed to be vouching, even if, out of context, it might be interpreted as such. *See State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997); *see also State v. Lee*, 185 Ariz. 549, 554, 917 P.2d 692, 697 (1996) ("she's been, I think, honest" and "I think he was an honest man" not improper vouching viewed in context of overall closing argument).

¶20        The purported vouching occurred during the following rebuttal argument:

> Ladies and gentlemen, what we've heard is that the Phoenix Police Department somehow--because their investigation was--they didn't do photographs and they didn't do DNA, that somehow that means that the State hasn't met its burden. *Ladies and gentlemen, you need to focus on the truth. Focus on the evidence that you've had.* Just because you took your kids last week to school and dropped them off and it wasn't photographed, it wasn't videotaped, there wasn't DNA to document you opening the door of the car, if you come in and testify, does that mean it didn't happen? Does that mean that it's not the truth?
>
> *The truth is what the officers testified to. They were under oath. They had to tell you the truth. They had to tell you that this is what happened; this is what I observed. Now, focusing on what the police didn't do doesn't take away from the truth.* It doesn't take--just because there were no photographs doesn't mean the defendant did not do these things that he's been accused of. *It doesn't mean that he didn't, with the intent to commit a felony, enter or remain inside the truck. That's the sole question before this jury.*
>
> And if you want to talk about credibility--you want to attack the credibility of these officers, let's talk about [Johnson]'s credibility. Making two stories up in front of you after he took the stand, a convicted felon nonetheless. *Whose credibility do you want to believe? Some guy who, for the first*

*time today, made up a story about how he wasn't even on the bike,
even though two officers testified that what they saw matches the
description of the person who was riding the bike but then arrested
seconds later by police.* If that were true, if [Johnson] was
never on the bike, then these officers would have to be
making it up. That's what the defense wants to say. This
was all a big misunderstanding, that the police officers got
the wrong person. They arrested the wrong person, even
though they watched it with their own eyes. Does that make
any sense to you? Is that reasonable doubt?

. . .

They even tried to say that somehow they tried--this was
one big conspiracy, that the officers were out to get
somebody, that they needed to get a bust because this is the
bait bike program. Really? Really? Is that--do you think
that's reasonable to say that? It's not reasonable. What
benefit do they have arresting innocent people off the street
when they're not even on the bike? Why would they make
up a story? What motivation has been presented, or
questioned even, of the officers to suggest that? None.
Absolutely none. But yet, the defense wants to come in here
and say that to you, that somehow this was a conspiracy for
the officers to get somebody because they wanted a bust.
Does that make any sense? That's not reasonable, ladies and
gentlemen, not reasonable whatsoever.

*[Johnson] has no credibility. He got up on the stand there and told
you a second story, which he told police. He's a convicted felon.
You can't trust or believe what he told you. And that's what their
defense is resting upon, [Johnson]'s testimony.*

(Emphasis added.)

**¶21**        The quoted rebuttal argument demonstrates that the
prosecutor was addressing Johnson's closing arguments and the
motivations that underlie the inconsistencies between his and the officers'
testimony in an attempt to persuade the jury to believe the officers, not
Johnson. The prosecutor's comments regarding the officers' truthful
testimony were linked to the evidence; namely, Johnson's conflicting
stories and his status as a convicted felon. As a result, the statements do
not rise to impermissible vouching, and no error, fundamental or
otherwise, occurred.

¶22        Because we conclude there was no prosecutorial misconduct as argued on appeal, there is no basis for Johnson's contention that the cumulative effect of the "misconduct" requires reversal. *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75, 189 P.3d 403, 419 (2008) ("Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness.").

## CONCLUSION

¶23        Johnson's conviction and sentence are affirmed.



Amy M. Wood • Clerk of the court
FILED:  AA