NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NATHANIEL BRYAN BEGAY, *Appellant.*

No. 1 CA-CR 15-0743
FILED 1-26-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-100673-001 SE
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul Prato
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Chief Judge Michael J. Brown joined.

---

**O R O Z C O, Judge**:

**¶1**　　　　Nathaniel Bryan Begay appeals his convictions and sentences for two counts of aggravated driving under the influence of alcohol, Class 4 felonies. Because he has shown no reversible error, we affirm.

## BACKGROUND

**¶2**　　　　The evidence at trial, viewed in the light most favorable to sustaining the conviction,[2] demonstrated that a state trooper stopped Begay for speeding in excess of 80 miles per hour on the Red Mountain Freeway near the Dobson Road exit at about 3:00 a.m. on February 24, 2013.

**¶3**　　　　When Begay handed his driver's license to the trooper, he told the trooper that his driver's license was revoked, and asked if he was going to jail. After confirming that Begay's license was revoked, the trooper administered sobriety tests and Begay exhibited numerous signs of impairment. The officer arrested Begay, and another officer drew his blood shortly before 5:00 a.m. Tests revealed a blood alcohol concentration of .202.

**¶4**　　　　At trial, a Motor Vehicle Division ("MVD") official testified that, on the date of the offense, Begay did not have a valid Arizona driver's license. He testified that the MVD had mailed several notices of revocation and suspension to Begay beginning in November 2011, and Begay had not undertaken the necessary steps to reinstate his license.

**¶5**　　　　Begay testified that he had not received any of the notices from the MVD; he believed his driver's license was valid; and it was only

---

[1]　　　　The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]　　　　*State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

after the trooper had told him his license was revoked that he repeated what the trooper had said and asked if he was going to jail. He further testified that, from 2010 through 2013, he spent a lot of time outside of Arizona working as a welder. He testified that his employers performed background checks, and he was required to provide up-to-date certification on heavy equipment vehicles "as well as provide [] information with our license." He testified he never learned of any problems regarding his license during any of the background checks.

¶6　　　　The jury convicted Begay as charged, and found that he was on probation for a felony conviction at the time of the offenses. The court found the existence of four prior felony convictions, two of which were historical prior felony convictions, and sentenced Begay to concurrent, presumptive ten-year prison terms with 183 days of presentence incarceration credit. This court has jurisdiction over Begay's timely appeal pursuant to Article VI, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1 (2016).[3]

## DISCUSSION

### A.　　Juror Questions

¶7　　　　Begay argues that the superior court abused its discretion in refusing to ask Begay the following questions submitted by a juror: "Did the employers[] doing background checks require him to travel while doing the jobs assigned?" and "Was a valid driver[']s license required for employment on any jobs from 2011-2013?"

¶8　　　　Over defense counsel's objections, the court found that neither question was relevant to whether Begay knew or should have known his license was revoked, in part because the time period mostly predated the date of the offense, February 24, 2013. The court found the question as to whether his employers required a valid driver's license would call for hearsay, stating

> it would call for him to talk about documents, information that he had gotten from his employers, which would be hearsay, and he would be using them to prove the truth of the matter asserted, whether or not suggesting that there had been whatever type of background checks, which he

---

[3]　　　　Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

personally, even if he provided information, he cannot himself verify whether they were conducted, whether they were completed, if there was ever any MVD check to see if a license was in fact valid. . . .

The court also said it would be "looking at it again . . . he's already testified regarding background checks."

¶9　　　Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Ariz. R. Evid. 401.  Whether Begay's employers required him to travel was of no probative value on any issue at trial, and specifically had no probative value on whether he knew or should have known his driver's license was not valid on the date of the offense, as necessary for conviction of aggravated driving under the influence.  *See* A.R.S. § 28-1383.A.1; *State v. Agee*, 181 Ariz. 58, 61 (App. 1994). Whether his employers required him to have a valid driver's license in the years leading up to these offenses also had little, if any, probative value on whether he knew or should have known his driver's license was not valid at the time of the offense.  This is because Begay could have either believed he had a valid driver's license, or have known that it was not valid but taken a conscious risk both to travel without one and that his employers would not thoroughly investigate and discover its lack of validity.

¶10　　　Moreover, the question of whether Begay's employers required a valid driver's license would have elicited inadmissible hearsay. *See* Ariz. R. Evid. 801(c). And even if admissible as an exception to the rule against hearsay, these and other issues would have been cumulative of Begay's testimony that his employers required him to provide information about his license, and he did not learn of any problems after they conducted background checks, and appropriately precluded on that basis as well.  *See* Ariz. R. Evid. 403.　On this record, the court did not abuse its discretion in refusing to ask this juror's questions. *See State v. Ellison,* 213 Ariz. 116, 129, ¶ 42 (2006) (holding that evidentiary rulings by the trial court are generally reviewed for an abuse of discretion.)

### B.　　Prosecutorial Vouching

¶11　　　Begay also argues that his convictions must be reversed because the prosecutor engaged in improper vouching by arguing in rebuttal closing: "So let's talk about when Officer [R.] took the stand.  He has no bias. He has no prejudice. He was doing his job.  He was looking out for people who were speeding, potentially impaired motorists.  He has

nothing to gain by not stating the facts that happened that night. You get to determine, if he seemed reliable to you when he took the stand."

¶12     To determine whether a prosecutor's remarks are improper, we consider "(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) (citation omitted). There are "two forms of impermissible prosecutorial vouching: (1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King,* 180 Ariz. 268, 276-77 (1994) (citation omitted). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (citation and internal punctuation omitted). Because Begay did not object to the argument at trial, we review for fundamental error resulting in prejudice. *See State v. Henderson,* 210 Ariz. 561, 568, ¶ 22 (2005).

¶13     Begay has failed to meet his burden for reversal on fundamental error review. In considering whether argument is misconduct, this court "looks at the context in which the statements were made as well as the entire record and to the totality of the circumstances." *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012) (citation and internal punctuation omitted). In this case, both before and after making the remarks challenged on appeal, the prosecutor emphasized that the jury was the sole determinant of credibility. The prosecutor also followed the remarks by outlining the evidence that supported the trooper's testimony. In this context, the remarks arguably did not constitute impermissible vouching. *See State v. Corona*, 188 Ariz. 85, 91 (App. 1997) (holding prosecutor's characterization of the witnesses as "truthful" did not constitute vouching because "the prosecutor made clear that it was for the jury to determine the credibility of the witnesses and her characterization of the witnesses as truthful was sufficiently linked to the evidence.") (internal quotation omitted). Moreover, even if the remarks about the trooper's ostensible lack of prejudice and bias were improper, the jury was instructed that counsel's arguments were not evidence, and it should consider only the evidence admitted at trial in reaching its verdicts. Absent any indication in this record that the jury failed to heed this instruction, we presume the jury followed it. *See State v. Newell,* 212 Ariz. 389, 403, ¶ 68 (2006). Finally, Begay has failed to show that these remarks "so infected the

trial with unfairness as to make the resulting conviction a denial of due process," as necessary for reversal. *Morris*, 215 Ariz. at 335, ¶ 46.

## CONCLUSION

**¶14**     For the foregoing reasons, we affirm Begay's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA