NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LANCE WEBER, *Appellant.*

No. 1 CA-CR 16-0548
FILED 12-26-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-000856-001
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele G. Ponce
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

**M O R S E**, Judge:

¶1 Lance Weber appeals his convictions and sentences on two counts of sexual assault, a class 2 felony; one count of attempted sexual assault, a class 3 felony; and two counts of assault, a class 1 misdemeanor. For reasons that follow, we affirm.

## DISCUSSION

*A. Voir Dire Questions*

¶2 Weber argues the prosecutor engaged in improper conduct during jury voir dire by asking stakeout questions. At issue are questions posed by the prosecutor that inquired how jurors felt about: (1) advice that women should not be afraid to be impolite when necessary to protect themselves because this advice is not always easy to follow when the woman knows a potential assailant; and (2) what physical injuries the jurors might expect to see on a rape victim. Because Weber failed to object to the prosecutor's questions, he has forfeited all but fundamental error review. *State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005). Under this standard of review, the defendant has the burden of proving that error occurred, that it was fundamental, and that he was prejudiced thereby. *Id.* at 567, ¶ 20.

¶3 In *State v. Prince*, our supreme court defined impermissible "stakeout questions" as questions that "'ask a juror to speculate or precommit to how that juror might vote based on any particular facts.'" 226 Ariz. 516, 529, ¶ 35 (2011) (quoting *U.S. v. Fell*, 372 F. Supp. 2d. 766, 770 (D. Vt. 2005)). The questions here did neither. The questions simply sought to determine whether potential jurors could keep an open mind when listening to and weighing the victim's testimony. Because the inquiries did not "seek to precommit the juror[s] to a specific result," *id.*, they did not constitute error, let alone fundamental error. *See State v. Lavers*, 168 Ariz. 376, 385 (1991) (before engaging in fundamental error review, this court must first find that error occurred).

B.        *Prosecutorial Vouching*

**¶4**        Weber also argues the prosecutor committed prosecutorial misconduct by engaging in impermissible vouching while questioning a witness and during closing argument.  It is improper for the prosecution to vouch for the credibility of the state's witnesses.  *State v. Bible*, 175 Ariz. 549, 601 (1993).  There are two forms of prosecutorial vouching: where the prosecutor places the prestige of the government behind its witness; and where the prosecutor suggests that information not presented to the jury supports a witness's testimony.  *State v. Doerr*, 193 Ariz. 56, 62, ¶ 24 (1998).  Because Weber failed to object to the alleged vouching, our review is again limited to fundamental error.  *Henderson*, 210 Ariz. at 568, ¶ 22.

**¶5**        Weber first points to testimony from a police detective that because the victim's bar tab matched up with the victim's statement, the victim was "honest about what she drank."  Contrary to Weber's contention, the challenged testimony was not intentionally elicited by the prosecutor.  Rather, the statement was unexpectedly volunteered by the witness, without objection from Weber, in response to a question asking what actions the detective took in investigating the case.  Accordingly, there was no prosecutorial misconduct on the part of the prosecutor with respect to the challenged testimony.  *See Pool v. Superior Court*, 139 Ariz. 98, 108–09 (1984) (holding prosecutorial misconduct is not merely error, negligence, or mistake, but "*intentional* conduct which the prosecutor knows to be improper and prejudicial" (emphasis added)).

**¶6**        Second, Weber contends the prosecutor improperly offered his personal opinion regarding credibility during closing argument by arguing the victim was truthful in her testimony and that Weber, in contrast, was a liar.

**¶7**        Prosecutors have wide latitude in closing arguments and are permitted to suggest reasonable inferences from the evidence presented, including ultimate conclusions for the jury's consideration.  *Bible*, 175 Ariz. at 602.  A prosecutor thus may characterize a witness as truthful if the argument is grounded in the evidence presented at trial.  *State v. Corona*, 188 Ariz. 85, 91 (App. 1997).  Given that other evidence presented at trial corroborated the victim's testimony, it was not improper for the prosecutor to argue that the victim was truthful in her testimony.  Nor did the prosecutor's argument that Weber was a liar amount to an expression of personal opinion regarding Weber's credibility because it was likewise a permissible argument linked to the evidence presented.  *See State v. Schrock*, 149 Ariz. 433, 438-39 (1986) (characterizing argument that a defendant's

statement was a lie as "a proper attack on defendant's statement"). The prosecutor merely urged the jury to draw reasonable inferences from the evidence regarding the credibility of the victim and Weber. Accordingly, the prosecutor's arguments were not improper.

       *C.*      *Cumulative Error*

**¶8**      Weber additionally argues that the prosecutor's actions of asking stakeout questions and engaging in vouching require reversal when considered cumulatively. We note that Arizona considers claims of cumulative error only with respect to "a claim that prosecutorial misconduct deprived a defendant of a fair trial." *State v. Hughes*, 193 Ariz. 72, 78-79, ¶ 25 (1998). Because we have found no prosecutorial misconduct, there is no merit to the claim of cumulative error. *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008) ("Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness.").

       *D.*      *Victim's Statement*

**¶9**      Finally, Weber contends the trial court erred in allowing a forensic nurse who examined the victim to testify to the victim's statement about the assault, arguing the statement was inadmissible hearsay. We review a trial court's ruling on the admissibility of hearsay evidence for abuse of discretion. *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003).

**¶10**      Hearsay is generally inadmissible at trial to prove the truth of the matter asserted. Ariz. R. Evid. 801(c), 802. Pursuant to Rule 803(4), however, otherwise inadmissible hearsay may be admitted if the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." The rationale behind this hearsay exception is that medical practitioners "will seek and patients will give reliable information to further necessary medical treatment." *State v. Robinson*, 153 Ariz. 191, 199 (1987). Weber argues the victim's statements to the forensic nurse were not admissible pursuant to Rule 803(4) because the examination was not for medical purposes. We disagree.

**¶11**      We apply a two-part test in determining whether hearsay statements are "reasonably pertinent to diagnosis or treatment: (1) was the declarant's apparent 'motive . . . consistent with receiving medical care;' and (2) was it 'reasonable for the physician to rely on the information in diagnosis or treatment.'" *Id.* (quoting *U.S. v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980)). Applying this test, the trial court could reasonably find that the

victim's statements to the forensic nurse qualified for admission under the medical diagnosis or treatment exception to the rule against hearsay.

¶12 Although the forensic nurse swabbed the victim for DNA and documented her injuries during the examination for potential use in a future prosecution, there was also testimony that the exam was performed for the dual purposes of treating the victim and gathering evidence. Further, the nurse who performed the exam testified that as a forensic nurse she is specially trained to provide care to trauma patients, such as sexual assault victims, who have experienced interpersonal violence, and that she provided medical care to the victim as part of her examination. The nurse further explained that taking the victim's history, including what occurred in the assault, was standard to guide the exam and let the nurse know on what she needed to focus and what samples to collect. Thus, the victim's statement about the assault was the sort of information reasonably relied on by the nurse in providing medical care to the victim.

¶13 The victim's testimony likewise supports the trial court's conclusion that her statements to the nurse were for medical purposes. When the victim first asked to see the nurse, she was not interested in prosecution, but rather wanted to see the nurse because she had been sexually attacked and suffered multiple injuries. Thus, the trial court could reasonably find that the victim's answers to the nurse's questions regarding what happened and what injuries she suffered were made to obtain appropriate medical care. On this record, there was no abuse of discretion by the trial court in admitting the victim's statements to the forensic nurse. *See State v. Lopez*, 217 Ariz. 433, 437, ¶ 15 (App. 2008) (concluding statements to medical professionals in post-sexual assault examination admissible under Rule 803(4)).

**CONCLUSION**

¶14 For the foregoing reasons, we affirm Weber's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA